## OATMAN vs. BOND, impleaded, &c.

An order of the circuit court in pursuance of sec. 1, chap. 88, General Laws of 1861, directing that an action to foreclose a mortgage be referred to a certain person to take all the testimony to be taken in this state, which either party might desire to use on the trial, is *appealable* under the fourth clause or subdivision of sec. 10, chap. 264, General Laws of 1860. Such an order deprives the party of his constitutional right to have his witnesses examined in open court, and therefore involves the merits of the action.

Chap. 88, General Laws of 1861, discloses in all its provisions an intention so to interpose obstacles and delays in the way of enforcing the class of mortgages therein referred to, as to leave the creditor without any substantial remedy, and therefore impairs the obligation of contracts, within the meaning of the constitution of the United States and that of this state.

That part of the act relating to the giving of security for costs might be sustained if it stood by itself, or could be separated from the unconstitutional provisions; but as all the important provisions of the law are invalid, and that part requiring security for costs was clearly intended to aid those provisions and to stand or fall with them, it is also held to be inoperative and void.

PAINE, J. did not concur in the opinion that chap. 88 was invalid on the ground that it impaired the obligation of contracts, but held that where it is palpable, as in this case, that the object of a law is, under the guise of regulating the remedy, substantially to destroy it as to a certain class of plaintiffs, it is invalid under that clause of the constitution which provides that " every person is entitled to a certain remedy in the law for all injuries or wrongs which he may receive in his person, property or character;" and also that the act was invalid because it deprived the party of his constitutional right to have his witnesses heard in open court.

APPEAL from the Circuit Court for *Rock* County.

This was an action to foreclose a mortgage.   The case is
stated in the opinion of the court.

*Conger & Hawes*, for appellant, argued that chap. 88, Laws
of 1861, was unconstitutional, and cited *Bronson vs. Kinzie*,
1 How. (U. S.), 311, 320; *Morse vs. Goold*, 1 Kern., 281, 291;
*Von Baumbach vs. Bade*, 9 Wis., 559. It is not denied that a
statute may be in part valid and in part void.   But when the
provisions which, standing alone, might be valid, are con-
nected with unconstitutional provisions which they are de-
signed to carry out, all forming one general scheme or sys-
tem, so that effect cannot be given to the provisions which
by themselves or in any other connection would be valid,
then the whole act must fall.   *Wynehamer vs. The People*, 3
Kern., 378, 441–2; *Warren vs. Mayor*, &c., 2 Gray, 84;
*Commonwealth vs. Hitchings*, 5 id., 482, 485; *Meshmeier vs.
State*, 11 Ind., 484.

*Bennett, Cassoday & Gibbs*, for respondent, contended that
the order of the court below was not appealable; that the
case involved the validity of so much only of the law as re-
lated to the appointment of a person to take testimony, and
the filing of security for costs (Sedgwick on Stat. and Con-
stitutional Law, 595–6); that the right of trial by jury in
*all cases at law*, which is secured by sec. 5 of Art. I of the
constitution of this state, and Art. VII of the amendments
to the constitution of the United States, does not give a par-
ty in civil actions a right to confront witnesses and take tes-
timony in open court; that the power of the legislature to
regulate the time and manner of taking testimony is not re-
strained by sec. 19, Art. VII of the constitution, except that
it shall be taken in equity cases the same as in actions at
law, and this is provided for in the act under consideration,
the same as by R. S. 1858, p. 802; that sec. 23, Art. VII,
authorizes the legislature to provide for the appointment of
a person not only to take testimony, but to exercise certain
judicial powers; that the legislature may change or vary ex-
isting rules of evidence and existing remedies, prescribe new
rules of evidence, and repeal, amend, change or modify the
laws governing proceedings in courts, in relation to past con-
tracts as well as future ones, provided the alteration does not

impair the obligation of the contract. *Von Baumbach vs. Bade*, 9 Wis., 577, et seq.; *Bronson vs. Kinzie*, 1 How. (U. S.), 311; 12 Wheat., 374; id., 339; 1 Kern., 285–293; 9 Barb., 482; 21 Pick., 174; 3 Gray, 551; Sedgwick on Stat. and Con. Law, 659, and 689 to 693; 22 Pick., 430; 5 Mass., 533; 6 Pick., 501; 9 id., 263; 21 id., 250; 9 Gill, 299; 17 Barb., 311; 11 Mo., 346; 17 Ill., 344.

As to decisions based upon impolicy, hardship or inconvenience, see Story's Conflict of Laws, 17; Sedg. Stat. and Con. Law, 308 to 311; 11 Pick., 487; 3 Mass., 523; id., 215; 4 Dal., 30; 2 Wheat., 25.

March 15.          *By the Court*, COLE, J.    This is an appeal from an order of the circuit court of Rock county, made in this cause on the application of the respondent, requiring the appellant to give security for costs in the action by a written undertaking in the sum of five hundred dollars, and staying all proceedings on the part of the appellant until such security was filed and approved by the court; and further directing that the cause be referred to William H. Pettit to take all the testimony to be taken in this state, which either party might desire to use on the trial of the same.    It is admitted that this order was entered under and pursuant to sections one and ten of chapter 88, Laws of 1861.

On the argument of this and other cases on the calendar, involving the same question, a preliminary objection was taken, that such an order under our statute was not appealable, and therefore that this court could not review it. But in answer to this objection it is claimed that such an order is appealable on several grounds.    It is claimed that it is appealable under the first clause of section 10, chapter 264, Laws of 1860, as being an order which affects a substantial right, by determining the action and preventing a judgment from which an appeal might be taken.    We do not think the order is appealable under this clause of the statute. It can hardly be said that this order in effect determines the action and prevents a judgment, although it would likely tend greatly to protract the litigation and embarrass the appellant in obtaining judgment.    Now the order which affects

a substantial right under this clause, is one which determines the action; the words "substantial right" being obviously qualified and restricted by the subsequent language in the same clause. The order in this case clearly does not determine the action, since it is not impossible for the parties to proceed and take all the testimony, and finally to have a trial and adjudication of the court upon the merits. Consequently it cannot be maintained that this order affects a substantial right and determines the action, and hence it does not come within the class of orders referred to in the first subdivision of section 10, chapter 264.

But it was further claimed that the order was appealable under the fourth clause or subdivision of that section. This makes an order appealable " when it involves the merits of an action or some part thereof," &c. Can this order, which refers the cause to a person to take and report to the court all the testimony which either party may desire to give in the action or use on the trial, be said to involve the merits of the action or any part of it? We think it does.

It must be admitted that the language here used to determine the appealability of an order, is succeptible of different interpretations. The order, to be appealable, must involve the merits of an action or some part of it. In placing a construction upon this provision of the statute, of course much will depend upon the force and meaning given to the word " merits" as here used. Justice SELDEN, of New York, in construing the corresponding provision of the Code of that state, in *St. John et al. vs. West. et al.*, 4 How. Prac. R., 329, thought the word " merits," as here used, should be understood as meaning the strict legal rights of the parties as contradistinguished from mere questions of practice which every court regulates for itself, and from all matters which depend upon the discretion or favor of the court. The order appealed from in that case was one denying an application to substitute certain parties as plaintiffs in place of the original plaintiff, who had deceased since the commencement of the suit. The judge held that the statute gave the personal representatives or successors in interest the right of continuing the suit upon coming in within a year of the death of

the original plaintiff, and that an appeal would lie from an order denying an application made for the single purpose of enforcing this right. The appeal however was dismissed on other grounds. In *Cram vs. Bradford*, 4 Abbotts' Pr. R., 193, it was held that an order which directed a reference in a case in which a reference was not authorized by law, was an appealable order; and that a court could not be said to have the power to grant or refuse a statutory right at its discretion. In *Green vs. Wood*, 6 Abbotts' Pr. R., 277, it was held that the examination of a party before trial as provided by the Code, was a matter of strict right, if claimed by the adverse party, and an order refusing such examination was appealable. In *La Farge vs. The La Farge Ins. Co.*, 14 How. Pr. R., 26, Justice BOSWORTH decided that an order refusing an attachment against a witness disobeying a subpœna requiring him to produce documentary evidence material to the party subpœnaing him, and which it was his duty to produce, was an appealable order. A party, he said, has a right to have the remedies provided by law, to secure the attendance of material and necessary witnesses, or the production of material and necessary evidence, enforced in his behalf, when he has been vigilant and done all which is incumbent on him to do to obtain such attendance, and an order which, without fault or laches on his part, prevents the remedies being made effectual, necessarily involves the merits and affects a substantial right.

In the case of *Rahn vs. Gunnison*, 12 Wis., 528, we had occasion to consider what the legislature intended by the language, "an order which involves the merits of an action or some part thereof." That was an appeal from an order refusing to set aside a summons and complaint for irregularity. The particular irregularity complained of was, that the summons, which on its face showed that it was issued in a suit in the county court of Milwaukee county, was attested in the name of the judge of the circuit court. We held the order not appealable for the reason that it was impossible to say that the mere matter of having a summons properly attested involved the merits of an action. A summons, we thought, was, in the nature of a notice from the plaintiff to

the defendant of the commencement of a suit, and related merely to the form or proceeding of bringing a party into court, and therefore, whether properly attested or not, could not in any way involve the merits of the litigation. In this latter case Mr. Justice PAINE criticises some of the views expressed by Mr. Justice SELDEN in *St. John vs. West* upon the proper meaning and import of the word "merits," and thinks the definition given by him too comprehensive. His idea is that the term "merits," as used in this statute, relates to matters of substance in the law, as distinguished from mere matters of form which do not affect the subject matter of the litigation. But even within this construction of the provision of the statute, it is clear that the order in the present case is appealable. For in the case of *Brown vs. Runals*, 14 Wis., 693, it was distinctly held that each party to a suit in equity, was, under our constitution, entitled to have his witnesses examined in open court, subject only to the occasional exceptions provided for in cases at law. The order in this case attempts to deprive the parties of this constitutional right, by referring the cause to a person to take all the testimony out of court which either party might desire to use on the trial. And if this order is to become operative, if it is to have any force and effect whatever, then is it not clear that in these particular cases the parties cannot have their witnesses examined in open court, however much they may desire it? Although the constitution, as interpreted by this court, secures to a party the right to have his witnesses examined before the court which tries the cause, still this order attempts to deprive him of this right and requires that all the evidence be taken out of court. If an order of this character does not involve the merits of the action, it is difficult to perceive what order would. Suppose in a common law action the court should deny parties litigant the right of producing their witnesses in open court, and of examining them on the trial in the presence of the jury, but should require the cause to be tried on depositions; would any one contend that such an order would not affect the very merits and subject matter of the litigation? If not, would an order by which a court should attempt to delegate its powers,

and clothe a private citizen with its jurisdiction to try a cause, be an order involving the merits of the action? We apprehend these suggestions hardly require an answer. The "merits" of an action do not relate to the moral and abstract rights of the case, without reference to the constitution of judicial tribunals, or their mode of investigating facts, or their well established rules of practice. Of course there are many things in the proceedings of courts of justice which are mere matters of form, not in any way affecting any substantial right, nor touching the real merits of the controversy. But we can hardly say that a right secured to a suitor by the constitution is an immaterial matter, to be regarded or not as the courts may think proper. And certainly if an order referring a case when it was not authorized by law to be referred, or discharging an order for the examination of a party before trial, or refusing an attachment for a witness who has been duly subpœnaed, and refuses to attend, can, with any propriety of language, be said to be an order which involves the merits of an action, then with much stronger reason can it be said that an order which attempts to deprive a party of his constitutional right to have his witnesses examined in open court, is one involving the merits of the action. Such an order comes within the most rigid and technical construction which is admissible, of this provision of the statute. This view of the appealability of the order is further strengthened by the consideration that a party must be to the expense of attending before the person appointed to take the testimony—must pay witness fees—and further must pay all the charges of the person appointed to take the testimony, unless they are waived, before the evidence is reported to the court for trial of the cause. Section 17, chap. 88, Laws of 1861.

But assuming the order to be appealable, then it is insisted that the appellant has sustained no injury from it; that it interferes with none of his rights; and therefore that his objection to it is premature. The case of *Noonan vs. Orton*, 5 Wis., 60, is relied on in support of this position. The cases are clearly distinguishable from each other. In *Noonan vs. Orton*, by the terms of the order, either party might

take his testimony before the commissioners, upon notice to the adverse party, at any time within three months from its date. The order was permissive, not compulsory, in its char- acter. Here the order is peremptory and absolute. It requires all the testimony to be taken by the commissioner, or examiner, which either party may desire to use on the trial. It cannot be said that the order is mere *brutum fulmen*, which a party may disregard and proceed with his suit. For by the 14th section of the act under which the order was made, it is provided that no action shall be tried until all the testimony shall have been taken and reported to the court. For these reasons it is obvious that the decision in *Noonan vs. Orton* does not apply to this case.

Our objections to this order, however, rest upon higher and broader grounds than the mere language of the order. We are of the opinion that chapter 88, Laws of 1861, is in direct conflict with the constitution.

I have already indicated one objection to this law, viz: that it requires the testimony in these mortgage foreclosure cases to be taken out of court, while by the constitution a party has the right to have his witnesses examined in court, subject to the occasional exceptions provided for in cases at law. In *Brown vs. Runals* we have expressed our views upon the constitutional provision requiring testimony in equity cases to be taken in like manner as in actions at law, and nothing further need be said here upon that subject. The language of the constitution is clear, positive and explicit, and cannot be disregarded. Another objection to this law is, that it impairs the obligation of contracts, within the meaning and restriction of the constitution of the United States and of this state. I do not propose to enter upon a discussion of the question as to how far the legislature may go in changing the remedy upon past contracts without impairing the obligation. That whole field of discussion has been very fully gone over in the opinions of the Chief Justice and Mr. Justice PAINE in the recent case of *Von Baumbach vs. Bade*, 9 Wis., 559, and I am content to rest the discussion there. The conclusion at which the Chief Justice arrived in that case, and in which I concurred, was "that it

is within the power of the legislature to repeal, change, or modify the laws governing the proceedings in courts of justice, as well as to past as future contracts, so that the parties have a substantial remedy, according to the course of justice as it existed at the time the contract was made." Applying this rule to the enactment under consideration, its invalidity becomes apparent. For without entering into a minute analysis of the law, it is plain to be seen that it does not leave to the holder of this class of securities "a substantial remedy according to the course of justice as it existed at the time these contracts were made." On the contrary, it is difficult to perceive how any candid person, capable of reading the law and comprehending its provisions, can fail to see upon its very face an intention to clog, hamper and embarrass the proceedings to enforce the remedy, so as to destroy it entirely, and thus impair the contract so far as it is in the power of the legislature to do it. Without stopping to draw the line between the remedies which may, and those which may not be taken away, probably no one would contend, in view of the provision in our Bill of Rights, which declares that "every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive in his person, property or character," that an act taking away all remedies for enforcing contracts would be a valid enactment. Equally objectionable is a law which burdens the remedy with such restrictions as to make it useless or not worth pursuing. That such is the character of this law, is evident on the least examination. All of its provisions disclose an intention on the part of the legislature, so to interpose obstacles and delays in the way of foreclosing this class of mortgages, as to leave the creditor without any substantial remedy. We furthermore think other very serious objections exist to this law, but we do not deem it necessary to notice them. Those which we have already referred to, are sufficient to invalidate the law and render it inoperative and void.

That part of the law relating to the giving of security for costs might be proper enough, if it stood by itself, or could be separated from the unconstitutional provisions. All the important provisions of the law we are constrained to declare

invalid, and as section 10 was clearly intended to come in aid of these provisions, and to stand or fall with them, we must likewise hold it inoperative and void.

It follows from these views that the order of the circuit court must be reversed, and the cause remanded for further proceedings according to law.

PAINE, J.   I concur entirely in the decision of the court and in the views expressed by Justice COLE, with the exception that I do not place the invalidity of the law upon the ground that it impairs the obligation of the contract.   I have no doubt, that within the rule upon that question which has been established by the supreme court of the United States, and by the current of state authority, this law would be held invalid upon that ground.   But in *Von Baumbach vs. Bade*, 9 Wis., 559, I expressed my views upon that subject, and held that the remedy might even be entirely destroyed by the state without impairing the obligation of the contract.

But section 9 in the Bill of Rights of the constitution, provides that "every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive in his person, property or character," &c.   The effect of this provision was considered by the Chief Justice in his opinion in the case of *Phelps vs. Rooney et al.*, 12 Wis., 705, *et seq.* And although I did not assent to the application which he gave it in that case, yet I do concur generally in the views he there expressed.   They are, substantially, that this provision does amount to a prohibition upon the legislature against abolishing entirely or substantially destroying remedies which have been once established, without providing others in their stead.   And although I should require a very clear case to bring a law within this provision, yet where it is palpable to every intelligent mind, that the object of any particular law is, under the guise of regulating the remedy, substantially to destroy it as to a certain class of plaintiffs, I think such law should be held invalid under this clause of the constitution.   And I am compelled to say that the law in question seems to me of that character.   I agree, there-

January Term, fore, that it is invalid upon this ground, and because it de-
1862.        prives the party of his constitutional right to have his wit-