# Edwards *v.* Williamson.

*Petition for Mandamus, by Tax-Collector against Probate Judge, to compel Approval of Official Bond.*

1.　*Presumption in favor of constitutionality of statute.*—The principle is fully recognized by this court, that in pronouncing on the constitutionality of an act which has received the sanction of a co-ordinate department of the government, the presumption will be indulged that such legislative act is constitutional, unless the court is clearly convinced to the contrary.

2.　*Constitutional provisions against laws impairing obligation of contracts.*—The provision contained in the constitution of the United States, which prohibits the passage of any State law "impairing the obligation of contracts;" and the similar provision in the State constitution, prohibiting the passage of any law "impairing the obligation of contracts by destroying or impairing the remedy for their enforcement," were intended to preserve sacred the principle of the inviolability of contracts against that legislative interference which the history of governments has shown to be so imminent, in view of the frequent engendering of popular prejudice, and the consequent fluctuations of popular opinion.

3.　*Obligation of contract, as affected by existing laws.*—The obligation of a contract has been defined to be, "its binding force on the party making it," or "the law which binds the parties to perform their agreement;" and it has been declared by the Supreme Court of the United States, that this depends upon the laws in existence when it is made, which are necessarily referred to in all contracts, and form a part of them as the measure of the obligation to perform by the one party, and the right acquired by the other.

4.　*Laws affecting remedy.*—Laws affecting merely the remedy may be altered according to the will of the State, provided the alteration does

10

[Edwards v. Williamson.]

not impair the obligation of existing contracts; and it is held not to impair, when it leaves the parties a substantial remedy according to the course of justice as it existed at the time the contract was made; and while it may not be necessary that the new or substituted remedy should be as prompt or convenient as the old one, "it is very certain that it must be fully adequate to the enforcement of the contract."

5. *Same.*—The constitutional prohibition has no reference to the degree of impairment, but alike forbids the least and the greatest; and any subsequent law, which so affects the remedy existing at the time the contract was made, "as substantially to impair and lessen the value of the contract," is within the provision.

6. *Laws authorizing tax-collectors to give separate bonds for collection of general and special taxes; validity as against county bonds issued under former law.*—Under the provisions of the act approved December 31st, 1868, by which counties, cities and towns were authorized, on a popular vote, to subscribe to the capital stock of any railroad deemed by them most conducive to their respective interests; when such subscription was made, and the bonds of the county, city or town issued in pursuance of it, the holders of such bonds were, by the terms of the statute, placed on a perfect equality with the State and county, in the assessment and collection of the necessary and proper taxes; the same duties were imposed upon all officers, State and county, concerned in the assessment and collection of such taxes, and the same remedies given against them for any neglect or breach of duty. Under the provisions of the act approved March 1st, 1876, and the amendatory act approved January 22d, 1877 (now forming sections 404–407 of the Code), tax-collectors are authorized to give separate bonds for the collection of the general State and county taxes, and for the collection of any special tax "authorized by law, or required by the judgment of any court," one or both; and when a collector gives a bond conditioned for the collection of the general taxes only, the governor is authorized to appoint a collector for the special taxes, who must be a citizen of the county, and must give a bond with such citizens as his sureties. *Held,* that the effect of these provisions, where a county had subscribed to a railroad under the law of 1868, and judgment has been obtained against it by a holder of its bonds, as in this case appears, is to permit the collection of taxes for general State and county purposes, as under former laws, while another remedy, less prompt and effective, is provided for the collection of the special railroad tax; and hence these sections, in their application to a county which had become liable on its subscription to a railroad prior to their adoption, are unconstitutional, and the tax-collector can not claim the right to give a bond conditioned for the collection of the general taxes only.

APPEAL from the Circuit Court of Lee.
Tried before the Hon. H. D. CLAYTON.

GEO. P. HARRISON, for the appellant.—The provisions of the act of 1868, under which the bonds here brought to view were issued, place the assessment and collection of taxes for their payment in all respects on an equality with State and county taxes. These provisions entered into, and formed part of the contracts evidenced by the county bonds, and doubtless contributed to their market value. The provisions of the later statutes of 1876 and 1877, while they are within the legislative power, so far as they relate to the future, can not be made to retroact, upon cases like the present, where they would neces-

[Edwards v. Williamson.]

sarily impair the obligation of contracts.—*McCracken v. Hayward*, 2 Howard, U. S. 612; *Ogden v. Saunders*, 12 Wheaton, 259; *Van Baumbach v. Bade*, 9 Wisc. 577; *Johnson v. Higgins*, 3 Metc. Ky. 566; Cooley's Const. Lim. 285. These later statutes show on their face an evident intention to clog and embarrass proceedings to enforce the necessary remedies for the collection of these special taxes; and are, for this reason, unconstitutional and void.—*Oatman v. Bond*, 15 Wisc. 28; Cooley's Const. Lim. 289. While it may be a general rule, that the right to a particular remedy is not a vested right; yet there are exceptions to the rule, and it does not apply where the remedy is a part of the right itself.— Cooley's Const. Lim. 292, 361; *Van Hoffman v. City of Quincy*, 4 Wallace, 535; *Souther v. Madison*, 15 Wisc. 30; *Smith v. Appleton*, 19 Wisc. 468. These later statutes, if they do not impair the obligation of contracts under the Federal constitution, are void under the State constitution of 1875, which protects the remedy as well as the obligation of the contract.

WM. H. BARNES & SON, and WATTS & SONS, *contra.*—The office of tax-collector is created and regulated by statute, and may be changed or abolished at the legislative will. It is a part of the machinery for carrying on the operations of the government, and is at all times subject to control and regulation at the discretion of the General Assembly. The instrumentalities and officers by and through them, as its agents, the State administers its internal affairs, are always within the discretion of the law-making power, unless restrained by express constitutional provision.—*Dorman v. The State*, 34 Ala. 216; *Merriwether v. Garrett*, 12 Otto, 472, 511–15. No person has a vested right under any general law, so as to prevent its repeal or modification whenever the General Assemby may think proper.—Cooley's Const. Lim. 284, 358, top. There is nothing in the act of 1868, known as the *Railroad Aid Law*, which can possibly be construed as limiting the power of the General Assembly over the office of tax-collector, or prevent it from increasing or diminishing the number of collectors, changing the character, condition, or penalty of their official bonds, imposing new duties upon them, or otherwise modifying their duties and responsibilities. Every person who took any county bonds, issued under the provisions of the act of 1868, is presumed to have known that the General Assembly had plenary discretion over the office of tax-collector, and can not complain of the exercise of that discretion. So far as the act of 1868 can be held to provide remedies for the enforcement of such county bonds, it was within the power of the General Assembly to change or modify it; the only restriction or limitation being,

that the alteration should not impair the obligation of the contract, and should leave a substantial remedy according to the course of justice as it existed when the contract was made. Cooley's Const. Lim. 286, 361, and authorities cited. It is immaterial to the holder of the county bonds, whether the taxes to pay him are collected by the general tax-collector, or by a collector specially appointed for the purpose. He is only interested in having them collected by an officer under a bond sufficient to protect him.

SOMERVILLE, J.—This is a petition for the writ of *mandamus*, by J. H. Williamson, as tax-collector of Lee county, against the appellant, J. K. Edwards, as the probate judge of the same county, to compel an approval of petitioner's bond as tax-collector. The refusal of the respondent to approve the bond was placed alone on the fact, that he did not deem the *form of the condition* as being proper and legal, under the peculiar facts of the case. There is no question raised in reference to the solvency of the sureties, or the sufficiency of the instrument in other respects. It was admitted to be executed in accordance with the provisions of sections 403–405 of the Code of 1876. But it was urged that these sections, embodying the act of March 4th, 1876 (Acts 1876, p. 93), are unconstitutional and void, as applicable to contracts made under the act of the General Assembly of December 31st, 1868, commonly known as the "Railroad Aid Law," to which particular reference will hereafter be made.—Acts 1868, p. 514. A peremptory writ was issued on the hearing by the Circuit Court, ordering the approval; and an appeal is taken from the judgment, to this court.

The question raised by the record is, whether these sections of the Code (§§ 404–407) can be made applicable to taxes authorized to be assessed and collected under the provisions of the act of December 31, 1868, without impairing the obligation of contracts entered into on the faith of, and under the terms of the latter act. Are they, in other words, so far as concerns the contracts in question, repugnant to either the Federal or the State constitution?

The enactment of December 31, 1868, is entitled "An act to authorize the several counties and towns and cities of the State of Alabama to subscribe to the capital stock of such railroads throughout the State as they may consider most conducive to their respective interests." It provides, in detail, for the legal ascertainment of the voice of the majority of qualified voters, and upon the announcement of the vote following the proposition of a subscription, the court of County Commissioners are authorized and required to make the subscription voted for in

behalf of any county, payable in the bonds of such county, of certain amounts and dates specified.

Sections 7, 8 and 9 of said act, thereupon, provide as follows:

"SEC. 7. *Be it further enacted*, That the court of County Commissioners of said counties, in which the electors shall have voted in favor of said subscription, are hereby *authorized and required to levy and assess, in the same manner as is now required by law for the collection of State and county taxes*, such tax as may be necessary to meet the interest falling due semi-annually on said bonds, and such other reasonable amount, to be determined by said court, as will pay the expenses of assessing and collecting said tax, and for issuing said bonds; *Provided*, that in no case shall such tax exceed one per cent. *per annum* upon the value of the real and personal property in said county, as yearly assessed and returned to the proper officers."

"SEC. 8. *Be it further enacted*, That the courts of County Commissioners in the various counties, in which such subscriptions shall have been made, as hereinbefore provided, are hereby *authorized and required to require the tax-assessors and tax-collectors to assess and collect said tax.* Then said courts of County Commissioners shall be, and they are hereby, invested with all the powers, privileges and rights, and bound by the same duty of proceeding against said tax-assessors and collectors, and their sureties, as are vested in, granted to, and imposed upon the auditor of public accounts by law, for the amount of said taxes not assessed, collected and paid over, or misapplied.

"SEC. 9. *Be it further enacted*, That *the tax-assessors and collectors* in the various counties which shall have voted for subscription, as hereinbefore provided, are hereby *vested and empowered with all the rights and remedies for collecting said tax as are now provided by law for the collection of State and county taxes, and be bound by the same duties;* and that the same pains and penalties as are now prescribed by law, shall attach to all persons for failing to render a tax-list, or for rendering a false list."

At this time, the statute required but *one* bond to be executed by every tax-collector, which obligated him to collect both general and special taxes.—Code of 1876, § 403; Code of 1867, §§ 494–496.

On March 4, 1876, the General Assembly passed an act, entitled "An act to allow tax-collectors to give *separate bonds* for the collection of the *ordinary* State and county taxes, and all other taxes for *special* purposes" (Acts 1875–76, p. 93); and the third section of the latter act was amended January 22, 1877 (Acts 1876–7, p. 19), so as to read, in substance, as stated in section 406 of the present Code. The two acts together, origi-

nal and amendatory, are now incorporated in the Code, so as to constitute sections 404 to 407, inclusive.

The full force and bearing of these sections can not be thoroughly comprehended without setting them out in *ipsissimis verbis*. They read as follows:

" § 404. *Separate bonds may be given for general and special taxes.* Whenever any county of this State shall be authorized by law, or required by the judgment of any court, to levy any *tax* for *any special purpose*, other than the taxes authorized by the general revenue laws of the State, the tax-collector shall be authorized to give *separate bonds* for the collection of the taxes authorized by the general revenue laws of the State, and those authorized by law, or required by the judgment of any court, to be levied by counties for special purposes.

" § 405. *Contents, execution, and approval of general and special bonds.* The bond for the collection of the taxes under the general revenue laws of the State, which includes all *State taxes*, and the *taxes* levied by the counties *for the purpose of defraying the current expenses of the county*, shall be made and approved in all respects as provided by section 403, and shall be conditioned faithfully to discharge the duties of tax-collector in the collection of such taxes. The bond for the collection of *special taxes*, authorized by law, or required by the judgment of any court to be levied by counties, shall be in double the supposed amount of such taxes, and shall be taken and approved in all respects as the bonds of tax-collectors, and shall be conditioned to perform all the duties of tax-collector in the *collection of such special taxes.*

" § 406. *On failure to execute either bond, collector collects taxes covered by other ; judge of probate notifies governor, who appoints ; appointee's bond and sureties.* In the event that a tax-collector now in office, or one hereafter elected or appointed, shall make and execute *one* of the bonds, and shall *fail or refuse to make the other*, he shall go forward and collect the taxes for the collection of which he has given bond ; and it shall then be the duty of the judge of probate of the county to notify the governor of the failure to give such other bond ; and the *governor shall then appoint a special tax-collector* for the collection of the taxes for which the regular tax-collector has failed to give bond ; and such special tax-collector, after having given bond and qualified as herein provided, shall proceed to collect the taxes for which he shall have been so appointed, under the same regulations and under the same penalties as if he was the regular tax-collector ; but such special tax-collector, so appointed by the governor, *shall be a citizen of the county*, and must *give as security of* [on] his bond *some citizen or citizens in the county for which he is appointed to collect the tax.*"

[Edwards v. Williamson.]

The official bond offered for approval in this case was conditioned "to faithfully discharge the duties of tax-collector of (said) Lee county, in the collection of *all State taxes*, and the taxes levied by the Commissioners Court of said county for the purpose of *defraying the current expenses* of said county during his term of office," &c.    It was insisted by the respondent, that the condition of the collector's bond should be "to perform *all the duties of his office*, which are or may be required by law," so as to include the duty of collecting certain *special taxes* which the Commissioners Court of Lee county had been ordered to collect, or have collected, in obedience to a peremptory writ of *mandamus* issuing from the Circuit Court of the United States.    This *mandamus* was based on a judgment in favor of one John B. Manning, against the county of Lee, for over the sum of $19,000, which had been rendered in a suit on certain bonds of the county, issued under the provisions of the act of December 31, 1868, commonly known as the "Railroad Aid Law."

We are not unmindful of the gravity of the question which we are called on to decide in this case, nor of the delicacy of the duty devolved upon us.    The principle is fully recognized, that in pronouncing on the constitutionality of an act which has received the sanction of a co-ordinate department of the government, this court will indulge the presumption that such legislative act is constitutional, unless "clearly convinced to the contrary."—*Morris v. S. & N. R. R. Co.*, 65 Ala. 193; *Zeigler v. same*, 58 Ala. 594; *Sadler v. Langham*, 36 Ala. 311.

The constitution of the United States prohibits the several States from passing any law impairing the obligation of contracts."—U. S. Const. Art. 1, section 10.

The several constitutions of this State contained provisions substantially in the same language, from 1819 up to 1875.    The present constitution, which became operative on December 6, 1875, contains the following clause:    "There can be no law of this State impairing the obligation of contracts by destroying *or impairing the remedy for their enforcement;* and the General Assembly shall have no power to revive any right or remedy which may have become barred by lapse of time, or by any statute of this State."—Const. 1875, Art iv, § 56.

The plain purpose of these constitutional barriers, we think, was to preserve sacred the principle of the inviolability of contracts against that legislative interference which the history of governments has shown to be so imminent, in view of the frequent engendering of popular prejudice, and the consequent fluctuations of popular opinion.

*The obligation of a contract* has been defined to be "its *binding force* on the party making it;" or, as observed by Wash-

ington, J., in *Ogden v. Saunders*, 12 Wheat. 259, it is "*the law which binds* the parties to perform their agreement." It was said by the Supreme Court of the United States, in *Mc-Cracken v. Hayward*, 2 How. 612, that "this depends upon the laws in existence when it is made; [and that] these are necessarily referred to in all contracts, and form a part of them as the measure of the obligation to perform them by the one party, and the right acquired by the other." The principle is announced, probably a little too strong, in *Van Hoffman v. City of Quincy* (4 Wall. 535, 550), that "the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into, and form a part of it, as if they were expressly referred to, or incorporated in its terms." And it is said that this principle "embraces alike those which affect its validity, construction, discharge, and enforcement."

It has often been held, that whatever belongs merely to the remedy may be altered according to the will of the State, provided the alteration does not impair the obligation of the contract; and it is held not to impair, provided "it leaves the parties a substantial remedy according to the course of justice as it existed at the time the contract was made."—Cooley on Const. Lim. 350, *note* 4, and cases cited; *Ex parte Pollard*, 40 Ala. 77. It may be that the new, or substituted remedy, is not required to be altogether so convenient, or prompt, as the old one; but it is very certain that it must be fully adequate to the enforcement of the contract. It is not permitted that the remedy may be so modified as to impair substantial rights, and no law is valid, under the above provisions of the constitution, State or Federal, which so operates on the remedy as not to leave existing creditors under a contract a substantial and adequate remedy, such as may have been guaranteed by the law in force at the time when the contract was made.—Cooley on Const. Lim. 358–9, 351, 355; *Von Hoffman v. City of Quincy*, 4 Wall. 535; *Wolf v. New Orleans*, 103 U. S. 358; *McKinly v. Cardozo*, (8 S. C. 71), s. c., 28 Amer. Rep. 275; *Jones v. Crittenden*, 6 Amer. Dec. 531; *Gunn v. Barry*, 15 Wall. 610.

In *Green v. Biddle*, 8 Wheat. 1, it was said, that if the act of the legislature so change the nature and extent of existing remedies as materially to impair "the rights and interests of the owner, they are just as much a violation of the contract, as if they overturned his rights and interests."

In *Louisiana v. New Orleans*, 102 U. S. 203, the obligation of a contract is held to be impaired by "such legislation as *lessens the efficacy of the remedy*" which the law in force at the time it was made provided for its enforcement.

In *Edwards v. Kearzey*, 96 U. S. 595, Mr. Justice SWAYNE, after an elaborate review of the past decisions of the United

States Supreme Court, announces the following principle as the correct one to be eliminated : " The *remedy* subsisting in a State, when and where a contract is made, and is to be performed, is a *part of its obligation ;* and any subsequent law of the State, which so affects that remedy as *substantially to impair and lessen the value of the contract,* is forbidden by the constitution, and is therefore void."

It certainly is not going too far for us to say, that the framers of our present constitution meant nothing less than this by the emphatic declaration made by them in section 56, article iv. of this instrument. A smaller measure of protection would be inadequate, as against that possible abuse of State power designed to be guarded against; for nothing can be more material to the obligation than the means of enforcement. And, as asserted more than once, by that court which is the final arbiter of all questions which, like the one under consideration, are of a Federal character, "the prohibition [in the constitution] has no reference to *the degree* of impairment. The largest and the least are alike forbidden."—*Planters' Bank v. Sharp,* 6 How. 327; *Von Hoffman v. City of Quincy,* 4 Wall. 535.

Applying these principles to the case before us, it is a noticeable and pregnant fact, that the act of December 31, 1868, places the holders of bonds issued under its provisions upon terms of *perfect equality* with the State, in the usual and sure method adopted for the collection of its own tribute. The court of County Commissioners are "authorized and required to levy and assess, *in the same manner* as is now [*i. e., was then*] required by law for the collection of *State and county taxes,*" such amount as was necessary to meet the interest falling due on said bonds, with certain incidental expenses, not to exceed the rate of one per cent. *per annum.* The tax-assessors and collectors of such counties are also "*vested* and empowered with *all the rights and remedies* for collecting said tax as are now [*i. e., were then*] *provided by law* for the collection of *State and county taxes,* and be [are] bound by the same duties." And the various Commissioners Courts, in the several counties voting subscriptions under the act, are "authorized and required to *require the tax-assessors* and tax-collectors to assess and collect said tax."—Acts 1868, pp. 516–17, §§ 7–9.

The power of taxation is often said to be one vast in its character, and searching in its extent. It is the arterial life-blood of the State ; for, without it, the corporate and political functions of every commonwealth would cease. The protection of the State is the consideration upon which taxes are demanded, and taxes are the equivalent paid the State for such protection. There is a cogent presumption that this equivalent will always be exerted, and by the enactment of vigorous laws

to this end, if necessary.—Cooley on Tax. 14–15. It can not be supposed that the State would permit so vital a power to be defied, or its execution to be defeated, by public sentiment, or popular prejudice, in any community within the domain of its jurisdiction, for the language of the constitution is mandatory, that "the *governor shall take care that the laws be faithfully executed.*"—Const., 1875, Art. 5, § 8. It is manifest that such equality of power, measured by the remedies existing at the time of the passage of this act, rendered more certain the prompt collection of the taxes imposed under its provisions; and the greater this certainty, the higher would be the market value of such securities in the hands of the holders. "One of the tests that a contract has been impaired," as said in *Planters' Bank v. Sharp*, 6 How. 327, "is, that *its value* has by legislation been diminished."

The question recurs, as to what effect sections 404 to 407 of the Code exert upon the remedy afforded under the act of 1868, in the matter of the collection of taxes. Does the new remedy, by which a separate bond is authorized for the collection of State and county taxes, *lessen the efficacy* of the prior one, by which the State certainly obligated itself to see that the holders of these contracts should receive their pay with the same certainty, at least, that the State received its own annual taxes? Does the remedy afforded by the Code so modify the previously existing one, as to *substantially impair and lessen the value* of these contracts? Or, in fine, does the new legislation furnish, on its face, an easy method by which the State can secure its revenue, and at the same time the holders of these county securities can be unreasonably hindered, delayed or embarrassed, in the assertion of their legal rights?—*Oatman v. Bond*, 15 Wis. 28; Cooley on Const. Lim. 355, 358–9; *Edwards v. Kearzey*, 96 U. S. 595.

We are not able, after much consideration of the matter, to answer these questions otherwise than in the affirmative. It is obvious that the act of 1868, as we have shown, placed the holders of these county bonds upon an exact equality with the State in the method of enforcing their dues. The acts of 1876 and 1877, as embodied in the above sections of the Code, destroy this equality, by abrogating the former and more efficacious remedy. We cannot be ignorant of the fact, so amply attested by history in every age, that where States, counties or municipalities, become burdened with large debts incurred in public enterprises, they not unfrequently grow restive, and even rebellious, under the weight of its oppressive exactions. And where such enterprises prove failures, and thus fall short of meeting popular expectation, it is to be expected that the resistance of public prejudice, in the exercise of financial self-

[Edwards v. Williamson.]

preservation, will be proportionately greater. The State, by the new enactments embraced in the Code, seeks to relieve itself of this embarrassment, and, to this extent, measurably increases that of the holders of these county securities. Its own taxes can be collected with promptitude, under the provisions authorizing a separate bond for general taxes; and an easy way is provided by which the taxes due the county creditors may at the same time *not* be collected. The special tax-collector, authorized to be appointed by the governor, in the event of the regular collector's refusing to give a bond for the collection of special taxes, is required to be a citizen of the county whose inhabitants owe the taxes, and so with the securities on his bond. Public sentiment in the debtor locality may thus frown down, and easily defeat the acceptance of the office, or the execution of a proper bond. The moral influence of the State, with its vast interest and aid, possessed by virtue of its sovereign power to coerce the settlement of its own taxes, is lost. There is a divorcement of the identity of interest and power pledged to this end by the act of 1868. The force of public opinion favoring the exact equality of taxation for the current expenses of the State, which must be co-extensive with the whole State outside of the counties specially taxed—an opinion, which sooner or later must find suitable embodiment in vigorous laws—can no longer be brought under legitimate contribution to coerce, in like manner, the collection of such special taxes, as was contemplated and pledged when the contract in question was made. These views derive new force from the theory of our constitution, Federal as well as State, that governments "derive their just powers from the consent of the governed;" or, in other words, as expressed in the Declaration of Rights, in our present constitution, that "all political power is inherent in the people, and all free governments are founded on their authority."—Decl. Ind., U. S. Const.; Const. (1875), Ala. Decl. Rights, § 3. The cases, indeed, are multitudinous, where laws become mere dead letters, because their attempted enforcement is defeated by the resisting power of public opinion.

Our opinion is, that the sections of the present Code under discussion (§§ 404–407, inclusive) materially impair the remedy afforded for the enforcement of contracts made under the act of December 31, 1868, and of the kind to which we have alluded, and that the new remedy provided is not a substantial and adequate one according to the course of justice as it existed at the time the contract in question was made. The efficacy of the former remedy has been lessened, so as to weaken the binding force of such contracts, and render still more embarrassing the difficulties of their enforcement. As to such contracts,

[Ashford v. Watkins.]

therefore, these sections are inoperative, and must, to this extent, be declared unconstitutional and void.—Cooley on Const. Lim. 350, *note* 4, and cases cited; *United States v. Lincoln County*, Dillon Cir. Ct. Rep. 184; *Louisiana v. New Orleans*, 102 U. S. 203; *Edwards v. Kearzey*, 96 U. S. 595; *Gunn v. Barry*, 15 Wall. 610.

The judgment of the Circuit Court, granting the writ of *mandamus*, is hereby reversed, and the application is dismissed, at the cost of the petitioner.