## The State *v.* Street *et al.*

117   203
123   437
f124  256
124   259

117   203
f126  614

117   203
130   152

117   203
137   264
137   665

117   203
144   485
e144  582.

*Indictment against County Commissioners and Judge of Probate for Willful Failure to perform Duties imposed by Statute.*

1. *Constitutionality of act for the improvement of roads and bridges in Marshall county.*—The statute entitled "An act for the improvement of roads and bridges in Marshall county, Alabama," (Acts of 1896–97, pp. 1228–1236), is not unconstitutional and void in that its title and body embrace two separate and distinct subject matters, in violation of Article IV, section 2 of the Constitution, which declares that "Each law shall contain but one subject, which shall be clearly expressed in its title"; since the improvement of roads and bridges, as stated in the title of the act and provided for in its body, pertains to but one general subject.

2. *Same; right of taxation.*—Section 5 of Article XI of the Constitution, which declares that "No county in this State shall be authorized to levy a larger rate of taxation in any one year on the value of the taxable property therein than one-half of one per centum," is not infringed upon or violated by the act for the improvement of roads and bridges in Marshall county (Acts of 1896–97, pp. 1228–1236), which provides that no part of the county revenues levied for general purposes shall be used in building bridges, but that the county commissioners shall annually levy a special tax, not exceeding one-tenth of one per centum, to be used in building and repairing bridges in said county, and further provides that the court of county commissioners shall annually appropriate and set apart, out of the taxes levied for general purposes, "such sum as the condition of the county treasury will warrant, but in no case less than one-eighth of one per centum on the assessed valuation of the said county, which sum shall be part of the one-half of one per centum authorized by law for county purposes," and that this sum, so set apart, shall constitute a road fund to be applied exclusively to the improvement of the public roads.

3. *Constitutional law; section 32 of Article IV applies only to appropriation from the State Treasury.*—Section 32 of Article IV of the Constitution, requiring all appropriations, not included in the general

[The State v. Street *et al.*]

appropriation bill, to be made by separate bills, each embracing one subject, applies only to legislative appropriations from the State Treasury, and has no application to the appropriation by the legislature of taxes it delegates to a county the authority to levy.

4. *Same; construction of statute.*—Where some of the provisions of a statute are violative of the constitution, while others are consistent with it, courts will treat the unconstitutional parts as if they were stricken out of the statute, and the constitutional parts will be maintained if they can be separated from and stand and be enforced without the unconstitutional parts of the law.

5. *Constitutionality of the act for the improvement of roads and bridges in Marshall county; act not affected by the unconstitutionality of the third section.*—The fact that the third section of the "Act for the improvement of roads and bridges in Marshall county, Alabama," (Acts of 1896–97, pp. 1228–1236), imposing a specific tax on particular vehicles, without regard to their value, is violative of the constitutional mandate that "all property shall be assessed in exact proportion to the value of such property," does not invalidate the whole statute; since, under the remaining provisions of the act which are consistent with the constitutional provisions, all the purposes of the statute are capable of being accomplished.

6. *Appeal by State when statute declared unconstitutional; what questions considered by the Supreme Court.*—Where an appeal is taken by the State under the statute which gives it a right of appeal in criminal cases, when the act of the legislature under which the indictment or information was preferred is held to be unconstitutional (Code of 1896, § 4315; Code of 1886, § 4515), the Supreme Court is limited to a consideration and decision of the constitutionality of the statute drawn in question.

APPEAL from the Circuit Court of Marshall.

Tried before the Hon. J. A. BILBRO.

The indictment under which the appellees in this case were indicted, tried and convicted, was as follows: "The grand jury of said county charge that before the finding of this indictment, Westly Hughes and Tuttle Thompson, two of the members of the court of county commissioners for Marshall county, Alabama, and Thomas A. Street, probate judge and clerk of the court of county commissioners for Marshall county, constituting a majority of said court of county commissioners, willfully failed at the first regular meeting of the court of county commissioners for said Marshall county, in the year 1898, to appropriate and set apart out of the taxes levied for general purposes in said county, one-eighth of one per centum on the assessed valuation of

[The State v. Street *et al.*]

said county, which sum should have been a part of the one-half of one per centum authorized by law for county purposes, said fund to be known as the road fund of Marshall county, against the peace and dignity of the State of Alabama."

To this indictment the defendant demurred, assigning ten grounds. The 9th and 10th grounds of the demurrer were as follows: "9. Because the statute under which this indictment is framed is unconstitutional and void as to that portion of said statute which purports to require the court of county commissioners to set apart and appropriate a portion of the county revenue to a road fund to be expended under the directions of a road supervisor." "10. Because that portion of section 2, which purports to require the court of county commissioners to perform the act, for which they are indicted for not performing, is unconstitutional and void." The court rendered judgment sustaining the 9th and 10th grounds of demurrer, and from this judgment the State prosecutes the present appeal.

WILLIAM C. FITTS, Attorney-General, for the State.

O. D. STREET, *contra.*—First, the act is unconstitutional, because its title and body embrace two separate and distinct subjects, viz.: 1. The improvement of roads. 2. The improvement of bridges. For each an entirely different scheme of machinery is provided. Bridges are placed under the exclusive control and management of the court of county commissioners as is the expenditure of the bridge fund created by the act.

The roads of the county, on the other hand, and the expenditure of the road fund is placed under the control of an official created by the act, and previously unknown to the law. They are dealt with by the act in question as different subjects. The question is not whether they could be treated in one and the same statute as a single subject matter, but whether they are so treated in the act under consideration. We submit that in the present instance they have not been treated as the same subject, but on the contrary they have been treated as separate and distinct matters.—*Ballentyne v. Wickersham*, 75 Ala. 533; *Rogers v. Torbut*, 58 Ala. 523; *State v. Harrison*, 11 La. Ann. 722.

[The State v. Street *et al.*]

2. Furthermore, many of the provisions of this act are not cognate to the improvement of either roads or bridges ; some relate to the building of new bridges and the laying out of new roads. Other examples of provisions not cognate to either subject matter may be found in sections 14, 15, 17, 18 and 20 of said act. Section 3 of said act is clearly unconstitutional and has been recently so held by this court. See *Smith v. County Commissioners ante* p. 196.

3. The unconstitutionality of one or more of these provisions, leads to a *prima facie* conclusion that the entire law is void, unless clearly the unconstitutional portion is separable without doing violence to the legislative intention from the remainder of the statute. *Yerby v. Cochrane,* 101 Ala. 541 ; *R. R. Co. v. Morris,* 65 Ala. 193 ; *Cooley Const. Lim.,* 178, 179, 186 and note ; *Barnhill v. Teague,* 96 Ala. 207 ; *Randolph v. B. & P. Supply Co.,* 106 Ala. 501.

4. Another constitutional objection to section 2 of this statute is that it violates Article IV, section 32 of the State Constitution. Clearly it introduces a special appropriation of one-fourth of the entire revenue of Marshall county in an act embracing other and distinct matters. This case is not distinguishable from the principle decided in *Woolf v. Taylor,* 98 Ala. 254.

BRICKELL, C. J.—The indictment alleges that two of the defendants are members of the court of county commissioners of the county of Marshall, and that the other defendant is the judge of probate of the county ; and that they willfully failed to discharge duties imposed on them by an act of the last General Assembly, approved February 18th, 1897, entitled "An act for the improvement of roads and bridges in Marshall county, Alabama." (Pamph. Acts, 1896-97, pp. 1228-36.) A demurrer was interposed to the indictment assigning ten causes. The ninth and tenth causes assail the constitutionality of the act, and these causes were sustained, and from the judgment sustaining them, this appeal is prosecuted by the State in pursuance of the statute. Cr. Code, 1896, § 4315.

The first insistence in support of the judgment of the court below is, that the act offends the clause of the second section of the fourth article of the constitution,

[The State v. Street *et al.*]

which declares, with exceptions it is not now necessary
to enumerate, that "each law shall contain but one sub-
ject, which shall be clearly expressed in its title." The
proposition in support of the objection that the act
offends this limitation, we state, as is stated in the brief
of counsel, "the act is unconstitutional, because its title
and body embrace two separate and distinct subject
matters, viz, : 1. The improvement of roads. 2. The
improvement of bridges."

From the multiplicity of judicial decisions, to which
this limitation has given rise since its introduction into
the organic law of the State, and since the introduction
of a corresponding limitation into the constitutions of
many of the other States, certain principles may be de-
duced, governing its construction and application upon
which there is very general, if not unbroken concurrence
of opinion. The limitation is not excepted from the
cardinal rule, that it is only a clear violation of the con-
stitution which will justify the courts in overruling the
legislative will. Every legislative act is presumed to be
constitutional, and every intendment is in favor of its
validity.—Cooley Const. Lim., (6th ed.), 218. While
the limitation must be so construed and applied as to
avoid and suppress the mischief against which it is di-
rected, the construction must not be strict, embarrassing
legislation by making laws unnecessarily restrictive in
their scope and operation, or by the multiplication of
their number, by an inhibition of the legislature from
the incorporation in one act of all matters properly con-
nected with one general subject.—Cooley Const. Lim.,
(6th ed.), 172. "By this generous principle of liberal
construction," as it is termed by Mr. Freeman, in the
annotations to the case of *Davis v. State*, 61 Am. Dec.
339, all well considered adjudications are guided. The
legislature must for itself determine how broad and com-
prehensive the subject of an enactment shall be, and the
degree of particularity which must be observed in the
title defining it. And so long as the generality of a
title is not "made a cover to legislation incongruous in
itself, and which by no fair intendment can be con-
sidered as having a necessary or proper connection,"
there is no cause of objection.—Cooley Const. Lim.,
(6th ed.), 172, 173. When the title of an act expresses
but one general subject, and all its provisions are allied
to the subject expressed or, as is usually said, germane

or cognate to it, all the purposes of the limitation are satisfied. This is the real test in each particular case : When the title expresses one general subject, however broad and comprehensive the subject may be, whether the act includes provisions, which by no fair intendment can be considered as having connection or relation to the subject expressed.

Applying these rules, if we were not compelled to indulge all reasonable presumptions in favor of its constitutionality, we could not hesitate to affirm that the act is free from all just objection as wanting in clearness in the expression of its subject in the title, or of duplicity in the expression of two dissimilar subjects, not having logical and legal connection. It is difficult to conceive of any two matters so treated by the common law, and by legislation, and in popular understanding, as constituting but one general subject, as public roads and bridges. In Elliott on Roads and Streets, 4–5, a road is defined as "a passage ground appropriated to public travel," and public roads as "such as are open to the public, and under the control of governmental instrumentalities, as counties, townships, road districts and local sub-divisions of a similar character. Such roads are set apart to the public and are maintained at public expense." In 1 Bouvier's Law Dictionary (Rawle's ed.), public bridges are defined as such "as form part of the highway, common, according to their character, as foot, horse, or carriage bridges, to the public generally, with or without toll ; though their use may be limited to particular occasions, or the seasons of flood or frosts." And in the standard work of Elliott, to which reference has just been made (p. 20), public bridges are defined as structures across a creek, river, or other natural body of water, or canal, ditch, or other artificial water way, erected for the accommodation of the public. And it is said, a bridge is an essential part of a road, and the "locating of a bridge is but the laying out of a highway." In all our legislation, roads and bridges have been associated as parts of one general subject, placed under the superintendence and control of the court of county commissioners.—Clay's Dig., 506, 1–41. In the subsequent codifications of the statutes, in which they were arranged in chapters and articles, a chapter has been devoted to "Roads, Bridges, Ferries and Water Courses,"

divided into articles, each article but a subdivision of the general subject.—Code of 1886, § 347, chapter 14, (Code of 1896, § 728, chapter 59). The act is not subject to the objection of repugnancy to the clause of the constitution invoked to defeat it.

The next insistence against the validity of the act is, in the argument of counsel, embodied in these words: "The Constitution of the State, Art. XI, Sec. 5, provides: 'No county in this State shall be authorized to levy a larger rate of taxation in any one year, on the value of the taxable property therein, than one-half of one per centum.' This is not only a limitation upon the taxing power of the county, but it is also a grant of a power of taxation to the extent of one-half of one per centum. The power to tax to this extent is, therefore, a constitutional power and can not be interfered with or impaired by legislative enactment. The power to tax is inseparable from the right to control the expenditure of the fund resulting from taxation. A limitation upon, or an interference with, the control by the county of the fund arising therefrom is a limitation upon or an interference with the power itself. As the legislature can not limit or interfere with the power itself, it can not limit or interfere with the fruits of the taxation.

The eleventh article of the constitution is devoted to the subject of taxation, and, as was observed by SOMERVILLE, J., in *Hare v. Kennerly*, 83 Ala. 608-11, its several provisions "are not grant of power to levy taxes, but limitations upon that taxing power, which has always been inherent in the State, and vested in the legislative branch of the State government, which is the depositary of all authority on the subject." And in exposition of the article, it was observed: "It fully recognizes three classes of taxes on property, and three distinct systems of taxation: (1) *State taxes*, levied for State purposes, and commensurate with the entire limits of the State; (2) *county taxes*, levied on property and subjects of taxation in the county, for county purposes; and (3) *municipal taxes* authorized by law to be levied for municipal purposes."

The fifth section of the article is devoted to county taxation and the first clause, prohibits the grant to a county of authority "to levy a larger rate of taxation in any one year, on the value of the taxable property

14

therein, than one-half of oné per centum.'' The prohibition by its terms, is a limitation or restraint of legislative power, and not of power residing in the county. Counties are involuntary political or civil divisions of the State, created by statute, to aid in the administration of government. Whatever of power they may possess, or whatever of duty may devolve upon them, originates in and is derived from legislation. They have no inherent power of taxation, nor are they by the constitution invested with such power—all the constitution contemplates is the legislative delegation of such power; and the statutes have delegated the power to the court of county commissioners, the agency by which all the powers of the county are exercised.—Code of 1896, §§ 958, 3985. A fallacy of the argument of counsel, fatal to it, lies in the supposition that the constitution grants to a county power of taxation, and that the power of taxation which legislation may delegate to them, is in any proper sense a constitutional power—it is power derived from the legislature, and may be withheld, or changed, or modified at legislative discretion, no element of contract with third persons intervening, compelling a levy and appropriation of taxes.—*Edwards v. Williamson*, 70 Ala. 145.

There are events expressed in the fifth section, in which a county may, by legislation, be authorized to levy special taxes, which may be in excess of the maximum prescribed by the first clause of the section—denominated special taxes, because of the special uses or purposes to which they must be applied. And of them, is the payment of any debt or liability created for the erection of necessary public buildings or bridges. The general statute, invests the court of county commissioners with authority to levy a special tax for the building of bridges and causeways.—Code of 1896, § 2498. The first section of the act before us, provides that no part of the county revenues, levied and collected for general purposes, shall be appropriated or used in building or repairing bridges; and requires the court of county commissioners, annually, at the time of levying taxes for general county purposes, to levy a special tax, not exceeding one-tenth of one per centum, to be known as the bridge tax, to be paid into the county treasury, kept separate from other county funds, and used in

building and repairing bridges and approaches thereto, and for no other purpose, under the direction of the court of county commissioners. And the court is authorized to obtain temporary loans, to pay such obligations as the county may owe; or may contract in repairing and building bridges and approaches, until the tax is collected, and from the taxes when collected to pay such loans. This is the entire provision of the act in reference to bridges, and we can not doubt that it conforms to the constitution.

The remainder of the act relates to the improvement of roads. The second section requires the court of county commissioners, annually, to appropriate and set apart out of the taxes levied for general purposes, "such sum as the condition of the county treasury will warrant, but in no case less than one-eighth of one per centum on the assessed valuation of the said county, which sum shall be part of the one-half of the one per centum authorized by law for county purposes," and this is to constitute a road fund, to be applied exclusively to the improvement of the public roads; and the manner of its use and application is particularly prescribed. The maintenance and improvement of public roads has been a legislative policy from the earliest days of organized government; and the policy has been to commit the duty of maintaining and improving them to the several counties, acting through the agency of the court of county commissioners. Legislative authority is essential to enable the court to make application of the funds of the county, and there has not been a period, when it had not authority to pay particular claims against the county originating in the maintenance or improvement of public roads. The whole scope of the act is, to create a special fund which must be applied to this public use or purpose. The burdens of the tax-payer are not increased—the limit of county taxation is not exceeded—the uses or purposes to which the fund must be applied are county uses or purposes, essentially. The legislative power exercised has been of continuous exercise from the beginning of government, and is not in conflict with the constitution.

Nor has section 32 of the fourth article of the constitution, any application to the act, nor is it a limitation of the legislative power exercised in its enactment. By

its terms—by its association with other preceding and succeeding sections of the constitution—its subject matter is appropriations from the treasury of the State. Surely it has no application to the appropriation by the legislature of taxes it delegates to a county the authority to levy.

The third section of the act, imposing a specific tax on particular vehicles, without regard to their value, was, at this term, (*Smith v. Court of County Commissioners, ante* p.196) declared violative of the constitutional mandate, that "all property shall be assessed in exact proportion to the value of such property." It is an elementary principle of constitutional law, that if some of the provisions of a statute are violative of the constitution, while others are consistent with it, the latter will be maintained, if they can be separated from and stand without the constitutional parts of the law. The courts will treat the unconstitutional parts as if they were stricken out of the statute.—1 Brick. Dig. 361, § 16; Cooley Const. Lim., (6th ed.), 209. Regarding the third section of the act as stricken out—as if it had never been enacted—the only result is, that the vehicles therein enumerated become taxable according to their value, and all the purposes of the statute—the improvement of roads and bridges—are capable of being accomplished.

The statute under which the appeal is taken limits the consideration and decision of this court to the constitutionality of the statute drawn in question. If the statute be constitutional, the judgment adjudging it unconstitutional must be reversed, though it be apparent the indictment founded on the statute cannot be maintained. In the exercise of the power, it is averred the defendants failed to exercise, they were clothed with power in its nature legislative and judicial. It may well be doubted if the section of the statute on which the indictment is founded, can be so construed as to embrace other than mere ministerial officers, and if it is capable of a larger construction, embracing the members of the commissioners' court, whether the indictment should not aver that the official delinquency imputed to them, proceeded from corrupt motives. And there are causes of objection pointed out by the demurrers, which

were overruled, which it may be, were well taken. These are not now matters for consideration. We cannot, if there is error, in these respects, set it off, as is suggested, against the error of sustaining the demurrers relating to the constitutionality of the act.

The judgment must be reversed and the cause remanded.