180 So. 567

**ISBELL v. SHELBY COUNTY et al.**

**7 Div. 510.**

Supreme Court of Alabama.

April 16, 1938.

L. H. Ellis, of Columbiana, for appellees.

Barney Isbell, of Columbiana, pro se.

Wm. Alfred Rose and Bradley, Baldwin, All & White, all of Birmingham, amici curiæ.

GARDNER, Justice.

In Lyon v. Shelby County, 177 So. 306 [1] this court considered and approved substantially the same plan proposed by the county, as here presented, for financing its proportion (approximately one-third) of the cost of construction of one of the county's highways under what is commonly known as the "three way project."

Some additional considerations are advanced in this renewed attack upon the plan which require brief treatment. It is proposed to finance the county's pro rata of expense out of that portion (one-half of one-third) of the gasoline tax allotment provided for by Schedule 156.11 of the Revenue Act of 1935, Gen.Acts 1935, pp. 441, 512, § 348, wherein there is a provision for an agreement of co-operation between the counties and the State Highway Department as to these funds to be used in the construction and maintenance of public roads and bridges, evidently intended to facilitate the work and aid the counties in the matter of road construction, which originally was primarily a county obligation.

The statute provides that the county has the authority to "direct the State Tax Commission to pay over to the State Highway Department such part of said funds as may be agreed upon by the * * * county, and the Governor." Taking advantage of this statutory provision, the original agreement contemplated the payment to, or upon the order of, the State Highway Department of $2,500 per month out of this allotment of the gasoline tax. But it was found that, if the work was to be expedited and the road completed in a reasonable time, it was necessary that the county make available its agreed contribution in cash. Thereupon the county agreed with the Highway Department upon the plan here proposed, that is, the issuance of interest-bearing warrants payable out of this particular fund, from sale of which the county's cash contribution to the Highway Department for construction of the road may be obtained. The State Highway Department and the county have agreed, and the Governor has approved.

The warrants to be issued are not to be a charge on the general credit of the county, and so expressly disclose on their face, but are payable solely from the funds which form a part of the proceeds of a state excise tax, allocated by statute to the counties for the construction and maintenance of roads and highways. They in no manner affect the general revenues of the county, nor the proceeds of any levy by the county for special county purposes under the Constitution. The proposed warrants, therefore, do not fall within any constitutional prohibition (In re Opinion of the Justices, 230 Ala. 673, 163 So. 105; Lyon v. Shelby County, supra; Herbert v. Perry, Ala.Sup., 177 So. 561 [2]), and the question for consideration rests upon the matter of statutory construction.

The plan is not one to borrow money. The county has now allocated to it these funds for a definite purpose, the construction and maintenance of public roads. It has the expectancy of a continuation of such allocation, and that of consequence the fund will continue. And

[1] Ante, p. 69.

[2] Ante, p. 71.

the county has the unquestioned right to contract with the State Highway Department for the construction of this public road at the agreed price and to issue, in payment therefor to said Highway Department, its interest-bearing warrants. Littlejohn v. Littlejohn, 195 Ala. 614, 71 So. 448; Board of Revenue v. Merrill, 193 Ala. 521, 68 So. 971; Talley v. Commissioners' Court, 175 Ala. 644, 39 So. 167; Lyon v. Shelby County, supra.

■ And under such a contract further auditing by the county would not be essential. Talley v. Commissioners' Court, supra.

■ Looking through form to substance, it is difficult to see wherein the plan here proposed differs materially from that just mentioned. In the one the warrants are issued to the contractor, and in the other the warrants, though of a non-negotiable character, are sold by the contractor or at his suggestion, and the proceeds used to pay him in cash, and the purchaser rather than the contractor is delayed in payment of the cash. The purchaser is compensated for the delay by· way of interest on the warrants, just as would be the contractor had the warrants been issued direct to him. These instruments are not warrants of the county in the true sense, but are merely evidences of transfer and pledge of a definite fund to their payment. Their issuance amounts in effect to a sale by the county of the anticipated revenue to be derived from the gasoline tax allocated by the state to the county for these purposes. There is no county obligation to pay, and the funds received from a sale of these instruments, denominated warrants, are in no sense a borrowing of money.

The authorities cited, therefore, relative to the authority of municipal organizations to borrow money (Allen v. Intendant, etc., of La Fayette, 89 Ala. 641, 8 So. 30, 9 L.R.A. 497; Simpson v. Lauderdale County, 56 Ala. 64; McQuillin's Law of Municipal Corporations, 2d Ed. § 2318; Mayor, etc., of Nashville v. Ray, 86 U.S. 468, 19 Wall. 468, 22 L.Ed. 164) are without application.

The question of interest bears a relation to the cash and credit price of an article sold. The warrants, by reason of their deferred status, are worth less than par, and the contractor or purchaser may state his price in terms of a necessary discount, and the fact that such discount may represent a given rate of interest does not make such a transaction a loan of money.

■ It is suggested that the proposed plan is variant from that provided in Schedule 156.11, supra, in that here the funds allocated to the county are paid by the State Tax Commission to the county treasurer, while the language of the act indicates a plan whereby the funds never reach the county but are paid over by the commission directly to the State Highway Department. But this is a difference in form only and not of substance, an administrative feature with which the act was not concerned,· except in a general way.

■ · But the argument overlooks the purpose of the act, and the character of authority possessed by the governing body of the county. The Highway Department and the county have agreed that the funds be sent to the county treasurer and then paid out. There is nothing in the act indicating any restriction whatever of the general power of the county over the matter of road construction. The general statute, section 1347, Code 1923, stands wholly unaffected, and must be considered in this connection. By that statute the governing county body is given unlimited jurisdiction and powers as to the construction and maintenance of public roads and bridges, and may make and enter into such contracts as may be necessary, or as may be deemed necessary or advisable by such courts or boards for such purpose, provided the payment of the contract price does not extend beyond ten years. The lawmakers could have given power in no more comprehensive terms than they employed in this statute, and the courts have no right to ignore it, or refuse to recognize its significance.

There is here no charge of fraud or unfair dealings, but good faith is acknowledged, and ·the time limit of the statute is observed. It is clear enough, therefore, that under the broad language of this statute, considered in connection with that of Schedule 156.11, supra, the county and the Highway Department had the right to enter into this contract and effectuate the change of method as to payment of the fund, as above indicated.

Nor are we able to see any restriction upon this authority by any provision of the Act approved March 4, 1937, Gen.Acts 1936–37, Ex.Sess. p. 179, which merely reiterate the purposes for which these

funds are to be used, with some clarification as to detail matter intended to be included within such purpose.

■ And what has been said as to the nature of the proposed plan should suffice to indicate our view that the payment of interest does not constitute a diversion of the funds from the purpose of road construction to which it must be devoted, but it is merely a part of the contract deemed necessary to effectuate the very purpose of the Act.

The case of Willett v. Calhoun County, 217 Ala. 687, 117 So. 311, dealt with the matter of employment of counsel under contract extending beyond the term of the officer the counsel were employed to serve, and, upon the theory it was contrary to public policy, the extended contract was invalidated. That authority is without application here, as no such question of public policy is involved, and, indeed, the provision for a ten-year period of limitation, found in section 1347, Code, should suffice for a refutation of this insistence.

■ Nor are the rules of law concerning registration of claims against counties (Mobile County v. Williams, 180 Ala. 639, 61 So. 963; Commissioners' Court v. Moore, 53 Ala. 25) applicable to the matter of registration of these warrants. There is no law so far as these warrants are concerned requiring their registration. They are to be registered for convenience and as a matter of record bookkeeping. But this results from the contract between the county and the Highway Department, which was entirely appropriate though not required by law.

■ The County Financial Control Act, Gen.Acts 1935, p. 803, is similar in its design and object to the Budget and Financial Control Act, Gen.Acts, Ex.Sess.1932, p. 35, for the state, considered to some extent in Southern Industrial Institute v. Lee, 234 Ala. 404, 175 So. 365, and much of the discussion therein as to the purpose of the act is applicable to that relating to the counties.

Counsel lay stress upon the expression in section 2 of the County Act, supra, "all public funds" that may come under the management and control of the counties, and argue that this fund allocated to the county of the gasoline tax to be used solely for highway purposes is within the influence of that act, and therefore, warrants against it are illegal, as under section 7. thereof no such warrant can issue until funds are available.

But we think this too restricted an interpretation of the act. It must be read as a whole and construed upon consideration of the entire act. So considered, we think it clear enough this Act has no relation to this particular fund which never reaches, and can never affect, the general funds of the county.

We think a detailed discussion of the act is here unnecessary, and content ourselves with the statement of our agreement with the opinion of the Attorney General upon this very question, as found in his quarterly report, volume VIII, page 156, and volume V, page 32.

As to the effect of the act relating to counties collecting $40,000 per annum for a special tax under section 215 of the Constitution, Gen.Acts 1935, p. 231, upon the power of the counties not within that classification, such as is here presented, we held in Herbert v. Perry, supra, that such an act in no manner limited the general power of the counties under section 1347, Code, and they were of consequence unaffected thereby. We noted also that the time period was changed from ten to twenty years. We adhere to the view expressed upon that question in the Herbert Case, supra, and deem further discussion unnecessary.

We have elaborated somewhat on the holdings in Lyon v. Shelby County, supra, and Herbert v. Perry, supra, and expressed our views upon objections not discussed because not presented in those cases. After all, constitutional objections being out of the way, the matter becomes one of legislative intent to be drawn from a proper construction of our statutes relating to the subject in hand.

■ Our conclusion is that Shelby County was within its legal rights in entering into the agreement with the Highway Department, and has authority to go forward with the proposed plan, and that the court properly dismissed the bill.

■ There was no specific attack made by appellant in brief, however, on the form of the warrants to be issued, though in the declaratory decree rendered on cross-bill the form of warrants is approved.

Counsel for the county states "conventional phraseology" was adopted to make them marketable. We feel constrained,

however, to express disagreement with some of the phraseology used. The transaction is a simple one. A certain allocated fund is being sold, assigned, or pledged for the payment of these warrants, and the county is to maintain this fund as it is received from the state inviolate for such purpose. But the warrant in the beginning acknowledges that the County of Shelby is indebted in the manner hereinafter stated. There is no indebtedness of Shelby County, and, though it subsequently appears the credit of the county is not pledged, yet the opening statement may well be considered as misleading. This is further emphasized by later phraseology in the warrant to the effect that the "indebtedness has been lawfully incurred, and to the extent required by any provision of law in respect thereof, has been audited and allowed by the governing body of the county; that such indebtedness is lawfully due without conditions, abatement or offset of any description; that this warrant has been registered in the manner required by law." There are other references to the "indebtedness evidenced and ordered paid by this warrant," as being within the debt limit allowed by law, and as being consistent with the Constitution and laws of Alabama.

The record disclosing upon its face there is no indebtedness of the county here involved, that in fact no auditing or allowance of claim nor their registration was required by law, we think it clear that all such recitals, as above indicated, would not suffice as an estoppel against the county, and the purchasers of such nonnegotiable warrants would not have the right to rely thereon. Mobile County v. Williams, supra; Commissioners' Court v. Moore, supra; Jeffersonian Publishing Co. v. Hilliard, 105 Ala. 576, 17 So. 112.

While we uphold the right of the county to issue warrants upon the plan proposed, yet we do not approve the form of the warrants adopted. On the contrary, we disapprove the form to the extent herein indicated, and the declaratory decree will be modified and corrected in this respect, and as thus corrected as to the form of the warrants will be here affirmed.

Corrected and affirmed.

ANDERSON, C. J., and THOMAS, BOULDIN, FOSTER, and KNIGHT, JJ., concur.

BROWN, J., dissents.

