6 So.2d 489
**COCHRAN v. MARSHALL COUNTY et al.**
8 Div. 165.

Supreme Court of Alabama.
Feb. 12, 1942.

Jesse M. Cochran, pro se.

Scruggs & Creel, of Guntersville, for appellees.

316

LIVINGSTON, Justice.

This is an appeal from a declaratory judgment rendered in the court below on a petition filed by the appellant under and by virtue of the provisions of the Act of 1935, pages 777 et seq., Code 1940, Tit. 7, §§ 156–168, in behalf of himself and all other citizens and taxpayers of Marshall County, Alabama, against said county, the judge of probate and ex-officio chairman of its Court of County Commissioners, and the members of its Court of County Commissioners; the Court of County Commissioners being the governing body of said county.

The suit sought a declaratory judgment based on the existence of a justiciable controversy arising out of the contention made by the appellant that a proposed issue of warrants by the appellee county would be invalid, and that there is no authority in law for payment of the same by said county. The answer of appellees admitted the allegations of fact set forth in the petition, but denied that the proposed action of the Court of County Commissioners of Marshall County and the proposed issue of warrants, or either of them, would be void, and further joined in the prayer for a declaratory judgment. By stipulation between the parties, the allegations of fact set forth in the petition were admitted. The cause was submitted on the petition, the answer and the stipulation.

In brief appellees adopt the following statement of controlling facts, as set forth in brief of appellant:

"Prior to May 31, 1941, appellee county duly issued and delivered various warrants (which are herein referred to as 'the outstanding warrants') at various times and in varying amounts for the construction or maintenance of roads and bridges. The outstanding warrants are now outstanding in large sums and are payable out of the revenues receivable by the county from the tax levied by the State of Alabama on distributors, refiners, retail dealers and storers of gasoline levied under the provisions of Title 51, section 647, of the Code of 1940 (which tax is herein referred to as 'said State tax') and distributed to the counties of said State under the provisions of Title 51, sections 655 to 657, inclusive, of said Code. For the payment of the principal of and interest on the outstanding warrants the county did prior to May 31, 1941, duly pledge and order set aside, out of the revenues receivable by the county from said State tax, varying amounts during each of the months from December 1941 to and including January 1948, ranging from a total minimum of $2,000 to a total maximum of $3,870 during any one month. Subsequent to May 31, 1941, said county has made arrangements with the State of Alabama for the construction and improvement of two necessary public roads in the county, a portion of the cost of which is to be borne by the county and a portion by said State. No part of the work thereon has yet been done. The petition does not so aver but it is admitted by the appellant that no obligation has yet been incurred under such arrangement and the court of county commissioners of the county is acting in good faith in its intention to carry out the proposed plan. Recognizing that such would be the only means whereby the county could finance its portion of the cost of the public roads so proposed to be constructed, the court of county commissioners of the county on December 8, 1941, adopted a resolution evidencing its intention to issue and sell $100,000 principal amount of State Gasoline Tax Warrants (which are herein referred to as 'the proposed warrants') of the county to be dated January 1, 1942, and to mature during the years from 1948 to 1951, inclusive, and provided that the same would be sold at the par value thereof plus accrued interest thereon to the date of their delivery for the purpose of raising funds with which to pay the county's portion of the cost of constructing said public roads. The proposed warrants would not be general obligations of the county but the principal thereof and interest thereon would be payable solely out of the revenues which might hereafter

be received by the county from said State tax, and it was provided in said resolution that there should be paid into a special fund, out of the revenues received by the county from said State tax, for payment of the principal of and interest on the proposed warrants, certain amounts each month from December 1941 to and including December 1950.

"The county did not then have and would not have during its current fiscal year funds sufficient to pay its portion of the cost of constructing said roads and in order to raise funds for such purpose it would be necessary to anticipate by the sale of proposed warrants a portion of the revenues which would be received by the county in the future from said State tax. No funds would be available for payment of the proposed warrants at the time the same would be issued. The proposed warrants would not be issued for the purpose of refunding or financing any indebtedness, obligation or commitment of the county outstanding on or prior to May 31, 1941, and would not be issued for the purpose of paying any emergency obligation resulting from an act of God or the public enemy over which said court of county commissioners had no control. The amount proposed to be set aside each month in said special fund for the purpose of paying the principal of and interest on the proposed warrants, when added to the amounts heretofore pledged and ordered set aside for the payment of the principal of and interest on the outstanding warrants, would in many months exceed one third of the total amount received by the county from said State tax during each of the months of October, November and December, 1941, and, when computed on an annual basis, would also exceed one-third of the total of the revenues received by the county during the fiscal year of the state and county ended September 30, 1941."

The trial court entered the following judgment, from which this appeal was perfected:

"This cause coming on to be heard on this date by agreement of the parties, was submitted for final decree on the petition, the answer of the respondents thereto, and the stipulation of the parties filed in this cause, and the same having been argued by counsel and considered and understood by the court, and the court being of the opinion that the parties are entitled to the rendition of a declaratory judgment as

prayed for in said petition, it is ordered, adjudged and decreed by the court as follows:

"(1) Title 12, Chapter 6 of the Code of Alabama of 1940, does not apply to the revenues receivable by the respondent county from the tax levied by the State of Alabama on distributors, refiners, retail dealers and storers of gasoline under the provisions of Title 51, section 647, of said Code and distributed to the counties of said State under the provisions of Title 51, sections 655 to 657, inclusive, of said Code.

"(2) Title 12, section 78, of said Code does not prohibit the issuance by the respondent county of the State Gasoline Tax Revenue Warrants to be dated January 1, 1942, proposed to be issued as set out in the petition herein.

"(3) Said warrants so proposed to be issued by the respondent county will not constitute a 'debt that may have been incurred by such county for the construction or maintenance of roads or bridges' within the meaning of Title 51, section 647, of said Code. The limitation of not exceeding one-third of the total amount of revenues which may be received by said county from the aforesaid tax that might be expended for payment of such debts, as contained in said section, will not be applicable to said warrants so proposed to be issued by said county."

■ This Court has repeatedly held that counties in this State have the power to issue and sell warrants payable solely out of revenues received by the issuing counties derived from the State gasoline tax. Lyon v. Shelby County, 235 Ala. 69, 177 So. 306; Herbert v. Perry et al., 235 Ala. 71, 177 So. 561; Isbell v. Shelby County, 235 Ala. 571, 180 So. 567; Burleson v. Court of County Com'rs, 235 Ala. 576, 180 So. 572.

There can be no doubt but that if the proposed warrants had been issued by the appellee county prior to May 31, 1941, the effective date of the 1940 Code of Alabama, in the manner contemplated in the resolution adopted by the governing body of the county, they would have been valid under the authority of the decision in the case of Isbell v. Shelby County, supra. Appellant argues that the appellee county and its governing body do not now have that power because of a change made in the budgetory provisions of the so-called county financial control act, General Acts 1935, page 803, Code 1940, Tit. 12, § 73 et seq..

when that act was carried into the Code of 1940. This Court in the Isbell case, supra [235 Ala. 571, 180 So. 570], speaking of the county financial control act said: "We think it clear enough this Act has no relation to this particular fund [meaning the gasoline tax fund] which never reaches, and can never affect, the general funds of the county."

The only change made in the county financial control act by the Code of 1940, which is here material, is that made in the budgetory provisions of the act, Title 12, section 74, Code of 1940. The governing bodies are now required each year "to prepare and adopt an estimate of the income of the county for the fiscal year beginning on October first of the current calendar year, for all public funds under their supervision and control." Whereas, prior to the effective date of the Code of 1940, the act required such budget to be made up only with respect to the general funds of the county.

■ Appellant's argument overlooks the fact that this change occurs only with respect to the requirement for the making of a budget. No other change, material to this inquiry, is made in any other portion of the act. The only legislative change made in this respect in the adoption of the Code of 1940 was to broaden the requirement that the annual budget of the county must include all public funds instead of merely covering the general fund of the county. If the legislature, charged with knowledge of the holding in the Isbell case, supra, had desired to alter or change the law as established by that case, it would have amended the county financial control act so as to make it clear that the restrictions on the issuance of warrants contained in that act should apply to warrants of the nature of those here proposed.

It would take a strained construction indeed to interpret a change in one section of the county financial control act relating to the making of budgets, and having no relation whatever to the issuance of warrants, so as to make the change apply to the issuance of warrants. And, especially so, when section 157 of the Alabama Highway Code—General Acts 1927, pages 348, 391, cited in the Isbell case, supra, as section 1347, Code of 1923, and sometimes cited as section 1397 [110] Michie's Code of Alabama, 1928,—is brought forward into the Code of 1940 without change in legal effect, Tit. 23, § 43.

■ For the foregoing reasons, the decision in the Isbell case, supra, is direct authority in support of the judgment of the trial court holding that Title 12, section 78, Code of 1940, does not prohibit the issuance by the respondent county of the State gasoline tax revenue warrants to be dated January 1, 1942, proposed to be issued as set out in the petition.

■ But that part of the judgment of the trial court as contained in paragraph 1 must be modified. Section 74, Title 12, Chapter 6, Code of 1940, does now require counties to budget the gasoline tax fund, and to that extent Title 12, Chapter 6, section 74, is applicable to that fund. Bullock County et al. v. Chris J. Sherlock, Highway Director, ante, p. 262, 5 So.2d 800.

■ Appellant further contends that the proposed action by the county and the issuance of warrants in pursuance thereof will violate section 647, Title 51, Code of 1940, in that, the payment of the principal of and interest on the proposed warrants, when added to the amounts required for the payment of warrants now outstanding, will require the use of more than one-third of the gasoline tax fund, contrary to the last sentence of said section 647, which reads: "However, the governing body of each county in Alabama is authorized to expend an amount not to exceed one-third of the total amount of such revenue that may be received by such county in the payment of any debt that may have been incurred by such county for the construction or maintenance of roads or bridges."

This sentence, or proviso, if it may be so designated, is not a limitation on the use of the gasoline tax fund: rather, it is an enlargement of the provision of section 647, supra, that the gasoline tax fund "shall not be used for any purposes other than for the construction, improvement, and maintenance and supervision of highways and bridges and streets, including the retirement of bonds for the payment of which such revenues have been pledged, and for no other purposes."

These provisions say to the county, you cannot use the gasoline tax fund other than for the construction, improvement and maintenance and supervision of highways and bridges and streets, including the retirement of bonds for the payment of which such revenues have been pledged. However, you are authorized to use one-third of such fund in the payment of any debt

that may have been (that is, theretofore, before the adoption of the Code of 1940) incurred for such purposes.

This sentence had its origin in act No. 216, S. 232, approved November 8, 1932, General Acts 1932, Special Session, page 225, and act, No. 51, H. 61, approved March 26, 1936, General Acts, Special Session 1936, page 28, both of which acts authorized the governing body of each county in Alabama to expend an amount not to exceed one-third of its share of the proceeds of the State excise tax on gasoline, etc., "in payment of any debt that may have been *heretofore* incurred by such county for the construction and/or maintenance of roads or bridges." These acts are considered by this Court in the case of Herbert v. Perry et al., supra, when the Court said: "(2) The county may expend not exceeding one-third of the amount received from the State from any tax on gasoline for the payment of any debt that may have been theretofore incurred by it *in* construction of county roads and bridges (General Acts of Alabama, 1936, Ex. Sess., pp. 28, 29, and General Acts of Alabama 1932, Ex.Sess., p. 225 et seq.)".

Furthermore, the sentence is limited to "the payment of any debt that may have been heretofore incurred by such county for the construction and/or maintenance of roads or bridges." In Isbell v. Shelby County, supra, in speaking of the nature of such warrants, the Court said: "These instruments * * * are merely evidences of transfer and pledge of a definite fund to their payment. Their issuance amounts in effect to a sale by the county of the anticipated revenue to be derived from the gasoline tax allocated by the state to the county for these purposes. There is no county obligation to pay, and the funds received from a sale of these instruments, denominated warrants, are in no sense a borrowing of money." This sentence or proviso can apply only to debts outstanding on May 31, 1941, the effective date of the Code of 1940. But warrants of the nature here involved are not debts within the meaning of said sentence or proviso.

As modified, as above indicated, the judgment of the lower court is due to be affirmed, and it is so ordered.

Modified and affirmed.

GARDNER, C. J., and BOULDIN and FOSTER, JJ., concur.