38 So.2d 844

**JEFFERSON COUNTY et al. v. CITY OF BIRMINGHAM.**

**6 Div. 776.**

Supreme Court of Alabama.

Nov. 26, 1948.

Rehearing Denied Feb. 17, 1949.

Chas. W. Greer, Frank Bainbridge, Maurice Bishop, and John Foster, all of Birmingham, for appellants.

Jas. H. Willis and Amzi G. Barber, both of Birmingham, for appellee.

Irvine C. Porter, City Atty., for City of Homewood, Bryant A. Whilmire, City Atty., for City of Leeds, and Edw. L. Ball, City Atty., for City of Bessemer, amici curiae.

FOSTER, Justice.

This case is here on second appeal. The first appeal was from a decree overruling demurrer to the bill. 248 Ala. 319, 27 So. 2d 584. After we affirmed the decree, respondents, who are the county of Jefferson and certain county officers on behalf of the county, filed answer and special pleas setting up two contentions, not determined on former appeal, namely (1) that the local act of 1885 (herein more particularly referred to) was repealed by the adoption of the Constitution of 1901; and (2) that to allow the claim the city would in substance and effect *collect* a *rate* of taxation greater than one-half of one percentum on property situated therein, since the city had for the years in controversy, 1944, 1945, 1946 and 1947, levied and collected the rate of one-half of one percentum on such property.

The contention that the local act was repealed by the adoption of the Constitution of 1901 is controlled by statutes and constitutional provisions copied in the opinion on former appeal. We will refer to those statutes and provisions without here copying their pertinent parts, since they were set out in that opinion.

(1) The Local Act of February 17, 1885, Acts of Alabama 1884–5, page 709.

(2) The opportionment statute as set out in section 130, Title 12, Code of 1940. See Act of August 26, 1909, General and Local Acts, Special Session 1909, pages 303 and 304.

(3) Section 5, Article XI, Constitution 1875.

(4) Section 215 of the Constitution of 1901.

On this appeal, appellants' counsel disclaim an intention of seeking to change any ruling on former appeal, but contend that they are no advancing theories not heretofore acted on or suggested in this controversy.

Their first contention is that the Act of 1885, supra, was repealed by the adoption of the Constitution of 1901, in that in doing so the second proviso of section 5, Article XI of the Constitution of 1875 was so amended by its counterpart in the Constitution of 1901, section 215, as that in addition to the limit of one-half of one percentum provided in the first part thereof, there was also a limit placed on the special tax referred to in the proviso, as set out in the Constitution of 1875, and it was also broadened by section 215, supra, so as to include as a beneficiary of such special taxes levied over and above the one-half of one percentum roads, as well as public buildings and bridges, to which such special tax applied in the Constitution of 1875.

On former appeal, we discussed the contention that the *proviso* of section 1 of the Act of 1885 was repealed by the second proviso of section 215, supra, and denied the contention. But that is not what appellant is now insisting on. But it is that by making the amendment to the second proviso, so as to include *roads* as beneficiaries of the special tax and putting a limitation on the amount of it, the Constitution intended to confine the entire right of a county to levy special road taxes to the terms of that proviso, and thereby set at naught a right held to exist under the Constitution of 1875 in favor of a county acting by authority of law to levy a special road tax within the limits of one-half of one percentum as set out in the first part of section 5, Article XI, and section 215, supra.

Under the Constitution of 1875, a county could not levy a special road tax in excess of the one-half of one percentum limit for general purposes. See, Montgomery County v. City of Montgomery, 190 Ala. 366, 67 So. 311; Board of Revenue of Jefferson County v. City of Birmingham, 172 Ala. 138, 54 So. 757.

Such was the constitutional status when the Act of 1885, supra, was enacted.

It could only have validity as a part of the general limit of one-half of one per centum. And as pointed out in our former cases, it created a mandatory duty on the county to make the levy within such general limitation. So considered, the Act was not violative of the Constitution of 1875. Board of Revenue of Jefferson County v. City of Birmingham, 205 Ala. 338, 88 So. 16; Board of Revenue of Jefferson County v. City of Birmingham, 205 Ala. 320, 88 So. 18.

■ Under the Constitution of 1875, the right of the county to levy a special tax for roads was restricted within narrower limits than was a special tax for public buildings and bridges There are a number of our cases cited and relied on by appellant, which hold that by the amendment of the second proviso of section 5, Article XI, Constitution 1875, to include roads, counties may, outside of the general limit of one-half of one percentum, by special levy raise funds for roads; and counsel for appellant argue that having such right to share in the broadened limits, counties are restricted to the special tax mentioned in the proviso and cannot also have a special tax as theretofore within the limits of the one-half of one percentum tax, although so provided by law. This is important because a special tax within the limit of one-half of one percentum may by law be shared with a city for street purposes, but funds derived from a special levy made under the second proviso must go to debts for roads (or public buildings or bridges), not including city streets. City of Montgomery v. Montgomery County, 185 Ala. 281, 64 So. 588; Commissioners Court of Tuscaloosa v. City of Tuscaloosa, 180 Ala. 479, 61 So. 431; Board of Revenue of Jefferson County v. City of Birmingham, 172 Ala. 138, 54 So. 757; Commissioners Court of Pike County v. City of Troy, 173 Ala. 442, 56 So. 131, 274, Ann.Cas.1914A, 771.

But there is nothing in any of our cases which refers to a constitutional policy to confine a special road tax by a county to the second proviso (section 215, supra), and therefore to prohibit authority to levy such a tax under the general limit of one-half of one percentum. And we see no sound argument for making such an interpretation of the second proviso of section 215, supra. It opened the door to roads to enter into a status theretofore applicable only to public buildings and bridges. It has never been held that the power to levy a special tax for public buildings and bridges was confined by the proviso to its provisions.

We do not so interpret the cases of State v. Street, 117 Ala. 203, 23 So. 807; Southern Rwy. Co., v. Cherokee County, 144 Ala. 579, 42 So. 66; Adams, Tax Collector v. Southern Rwy. Co., 167 Ala. 383, 52 So. 439.

■ The special tax under the proviso must be used to pay past debts or those thereafter created for such construction, not to raise money to be used in construction without creating a debt. Southern Rwy. Co., v. Cherokee County, supra. But a special tax levied under the general limit has no such restriction, nor any other restriction. It is not indicated in our cases that the court thought that the amendment intended to cut off a power which theretofore existed, but rather to broaden the limits of another power to include roads. Our cases recognize the validity of a road fund created by law since the Constitution of 1901, made out of the tax levied within the limitation of one-half of one percentum. State ex rel. City of Mobile v. Board of Revenue of Mobile County, 180 Ala. 489(8), 61 So. 368; Town of Eutaw v. Coleman, 189 Ala. 164, 66 So. 646; Commissioners Court of Tuscaloosa County v. City of Tuscaloosa, 180 Ala. 479, 61 So. 431; Phillips v. Atkins, 229 Ala. 15, 155 So. 537.

■ Since the proviso only applies to debts, it does not embrace the power to create funds for road purposes when a county is in no position to make a debt, or unless a debt has already been created. Gunter v. Hackworth, 182 Ala. 205, 62 So. 101; Littlejohn v. Littlejohn, 195 Ala. 614, 71 So. 448. The amendment to the proviso in section 5, Article XI (section 215, supra) should not be construed to prevent a county, which cannot make a debt, from raising funds by a special tax for road construction when such special tax is within the

narrow limitation of one-half of one per-centum. State v. Street, supra.

We cannot therefore agree with appellants' first contention.

The next insistence is that the apportionment act serves to violate section 216 of the Constitution of. 1901, in respect to the years in question, 1944, 1945, 1946 and 1947, because for those years the city of Birmingham had levied and collected a tax in the amount of the maximum rate there authorized of one-half of one percentum of the value of the property situated therein as assessed for State taxation during the preceding year.

■ The contention is soundly stated that a tax cannot be levied by the county for a city, and collected by the city in any amount when the city has levied the full maximum rate of one-half of one percentum on the value of the property situated in the city, since section 216 prohibits the *collection* of a tax beyond the maximum as well as the *levy* of such a tax. Section 216 of the Constitution of 1901 is as follows:

"No city, town, village, or other municipal corporation, other than as provided in this article, shall levy *or collect* a higher rate of taxation in any one year on the property situated therein than one-half of one per centum of the value of such property as assessed for state taxation during the preceding year." (Italics ours.)

Reliance is had on the case of State v. Southern Rwy. Co., 115 Ala. 250, 22 So. 589, to sustain the view that the instant situation is governed by that principle. In that case it appears that the city of Birmingham had levied its maximum amount of ad valorem taxes. The effort was to levy an additional tax for the city schools. In order to evade section 7, Article XI, Constitution of 1875 (section 216, Constitution of 1901), the legislature passed an act making the levy of twenty cents on the value of every one hundred dollars worth of property in the city. This was by way of amending another act. The Court held that the amendment introduced a new subject to the existing act and violated section 2, Article IV of the Constitution of 1875 (section 45 of the Constitution of 1901). It also held that it violated sec-

tion 7, Article XI of the Constitution of 1875 (section 216, Constitution of 1901). It contained the provision that "there is hereby laid and levied upon all the taxable property within the corporate limits of the said city, or that may be lawfully taxable therein, an annual tax, two tenths of one per cent. or twenty cents on every one hundred dollars worth of such property, which shall be assessed by the tax assessor of Jefferson county at the same time, and in the same manner, and under the same penalties and entered on the same lists with other state taxes. And the same shall be collected by the tax collector of Jefferson county at the same time with and as a part of the state taxes. And when collected shall be paid over each week to the treasurer of said board to be by him paid out and expended under the orders and direction of the said school board that whenever the tax levied by the state shall exceed fifty-five cents on every one hundred dollars of taxable property, then the tax hereby levied shall be diminished to that rate which added to the rate levied by the state shall not exceed seventy-five cents on every one hundred dollars worth of taxable property, the limit fixed by the constitution." Acts 1894–95, p. 738.

The Court in that case held that the Act violated what is now section 216, Constitution of 1901, using the following language [115 Ala. 250, 22 So. 592]:

"If this tax had been authorized to be levied directly by the city, most obviously, it would have been in direct violation of this provision of the constitution, as being a tax authorized to be levied by the city in addition to the maximum rate of taxation authorized by the constitution. For this reason, no doubt, such a provision was not incorporated in the act. It was supposed, however, as appears from the terms of the act, that this constitutional inhibition might be legally avoided, by providing that the state should levy and collect the tax and pay the same over to the treasurer of the board of education. In aid of this device, it is provided, as we have seen, 'that whenever the tax levied by the state shall exceed fifty-five cents on every hundred dollars of taxable property, then the tax hereby levied shall be diminished

to that rate, which added to the rate levied by the state, shall not exceed seventy-five cents on every hundred dollars worth of taxable property,—the limit fixed by the constitution.' But if this were allowed, it would effectually emasculate this constitutional prohibition. It would sanction the levy of a tax by the state for the purposes of public education in the city, which the city itself is prohibited by the constitution from levying and collecting, and which, if sanctioned as to one city, might be extended to every other locality in the state, in overthrow of this fundamental law. It would allow a thing to be done indirectly, which is forbidden to be directly done."

In the case of Commissioners Court of Tuscaloosa County v. City of Tuscaloosa, 180 Ala. 479, 61 So. 431, the question of the application of section 216, Constitution, again came before the Court. The Court was dealing with an Act of 1903, page 433. The substance of it, here material, is that the commissioners' court is required to appropriate and set apart out of the taxes levied for general purposes (one-half of one percentum) an amount not less than one-sixth of one percentum of the assessed value of property in the county to become a part of the county road and bridge fund. It therefore came under the apportionment act of August 26, 1909, General Acts 1909, page 304: Section 130, Title 12, Code of 1940. See, County of Montgomery v. City of Montgomery, 190 Ala. 366, 377, 67 So. 311.

It was held first that since the apportionment act was an appropriation of funds derived from taxes levied under the general power not to exceed one-half of one percentum, and not under the second proviso of section 215, supra, it did not violate section 215 to make an apportionment of the special road tax with the city, citing Board of Revenue of Jefferson County v. City of Birmingham, 172 Ala. 138, 54 So. 757; Commissioners Court of Pike County v. City of Troy, 173 Ala. 442, 56 So. 131; Commissioners Court of Calhoun County v. City of Anniston, 176 Ala. 605, 58 So. 252. And further the Court was cited to the case of State v. Southern Rwy., supra,

in support of a contention that the Act violated section 216, Constitution of 1901. Answering that citation, the Court observed [180 Ala. 479, 61 So. 432]:

"This case has no bearing upon the present question, for there the act considered expressly increased the rate of taxation on property within the municipality above the constitutional limit, notwithstanding it was levied and collected by the state or county authorities. *It was a tax on municipal property for municipal schools, and was not an appropriation of a part of a county fund legally levied and collected to the municipality. Here there is no additional burden of taxation put upon the property owners of the municipality, and the tax rate is in no sense increased, as the act creates a benefit instead of a burden on the city taxpayer.* It simply, with the ends of justice and equity in view, requires the transfer of a certain portion of a fund legally collected, to the source from which it was derived, instead of expending all of said fund upon the highways outside of the municipalities." (Italics ours.) See, State v. Street, supra, 117 Ala. at page 211, 23 So. 807.

The argument is here made that the report of that case does not show that the city of Tuscaloosa had levied the maximum of one-half of one percentum, and therefore that the collection of this amount was not shown to be in excess of the limit of one-half of one percentum. But the original record in our files shows that one-half of one percentum had been levied in full.

Section 216, supra, would have no application or need of discussion if the amount of the collection by the city from the county did not raise the rate beyond the maximum. The Court held that the tax levied under the Act of 1903 by the county, and the apportionment of it with the city, under the apportionment act, was not a city tax collected by the city, but an appropriation to the city of a part of a county fund legally levied and collected.

It is well settled that the State may appropriate county funds by act of the legislature for public purposes. Stone, Treas. v. State ex rel. Horn, Ala.Sup., 37 So.2d

111;[1] Board of Revenue of Mobile County v. Puckett, 227 Ala. 374, 149 So. 850; State v. Street, 117 Ala. 203, 23 So. 807; City of Mobile v. Board of Revenue of Mobile County, supra; Town of Eutaw v. Coleman, supra; Ryan v. Goodrich & Crinkley, et al., 199 Ala. 642, 75 So. 17.

As pointed out in the Tuscaloosa case, supra, the city here will not collect a tax, nor was one levied for the city, but an appropriation was made by the legislature of funds out of the county treasury. It is immaterial to the validity of such appropriation how the county derived the fund, if the appropriation did not violate some other superior right or constitutional provision.

The tax here in question was county wide on all assessable property in the county, and in existence long before the adoption of the apportionment act, as in the Tuscaloosa case, supra. The tax levy was valid as a part of the one-half of one percentum maximum, and created a county fund subject to apportionment, with no constitutional restriction as to its use.

But it is insisted that the Southern Railway case, supra, should apply because of a provision of the Act there in question, which is thought to be important, though not given importance in the Tuscaloosa case, supra. That is, the provision which automatically reduced the rate for the city when it with the State levy for other purposes exceeded the limit for the State of seventy-five cents on the hundred dollars.

But the purpose of the Act in so providing was to make sure that it would stand as a State tax, knowing it would not stand as a city tax. True, it did not and could not stand as contemplated if the entire State tax with it exceeded seventy-five cents on the hundred dollars. But if it was to have any effect at all, it must increase the State tax, otherwise levied by the State. If that increased the State tax beyond seventy-five cents, it was automatically reduced by the amount of such increase.

But the mandatory provisions of the Act of 1885, here dealt with, had no such automatic reduction. The other general levies of the county would necessarily be reduced. So that under that Act, the combined tax levies by the county could not exceed one half of one percentum, not considering other constitutional special tax levies.

But the effect of the requirement that it must be part of the one-half of one percent tax limit, is to make it a valid constitutional tax.

The decree of the trial court gave effect to these views, and it is affirmed.

Affirmed.

BROWN, LAWSON, SIMPSON, and STAKELY, JJ., concur.

On Rehearing.

FOSTER, Justice.

Counsel for appellant insists that we have misinterpreted the previous decisions of this Court, wherein we said that the second proviso to section 215 of the Constitution does not embrace the power of the county to create funds for road purposes when the county is in no position to make a debt, observing that the decisions have been to this effect. In this we cannot agree with counsel for appellant.

In the case of Southern Railway v. Jackson County, 189 Ala. 436, 66 So. 570, we find the following clear cut expression in that particular:

"Having due regard to the language of the special tax proviso of section 215, and also the clear purpose of section 224, we think the future application of section 215 must have been intended only for those counties which possess the power of creating county debts or liabilities; that is to say, counties which have not exceeded the debt limitation prescribed by section 224 of the same instrument."

Also in the case of Littlejohn v. Littlejohn, 195 Ala. 614, 71 So. 448, 449, speaking with reference to said second proviso of section 215, the Court observed "that this section contemplates the creation of debts (necessarily within the debt limit fixed by section 224 of the Constitution) by county governing bodies."

---

[1] Ante, p. 240.

And in the case of Southern Railway v. Cherokee County, 144 Ala. 579, 42 So. 66, 67, construing the words of said proviso, "or that may hereafter be created," held them to mean debts contemplated by the commissioners' court for erecting, maintaining and repairing public roads, and to provide for the payment of such debts.

And in Littlejohn v. Littlejohn, supra, with reference to the term "liability" in said proviso, it was held that in connection with the word "debt" there used, it comprehended "the engagement for and the payment of interest as an incident to the principal obligation validly assumed by the county in order to provide public buildings, public roads, and bridges. * * * it does contemplate the incurring of obligations for those purposes, to be satisfied and discharged in the future, and intends the gathering of the means to that end by and through the imposition of the special taxes described in section 215." That opinion also recognizes that the proviso of section 215, supra, contemplates the creation of a debt or liability, and the authority to levy the special tax there described is to be applied to the exclusive use of discharging the debt or liability so incurred.

In those cases the Court was dealing with a county which does not appear to have reached its constitutional debt limit; and while in the Littlejohn case, supra, it observes that the power to incur a debt or liability is expressly recognized by the proviso in section 215, that power must be understood to be within the limits of section 224, supra, because the next paragraph above so states, and because there is nothing in the opinion or in the report of the case indicating that the county had reached its constitutional debt limit. In the Jackson County case, supra, the same status exists in that respect.

Counsel for appellant insists that the word "liability" has peculiar significance in this proviso.

It is perfectly clear from all those cases that the debt or liability referred to in the proviso "contemplate the incurring of obligations for those purposes, to be satisfied and discharged in the future." Littlejohn v. Littlejohn, supra.

We are also taken to task for what counsel for appellant conceives to be a misinterpretation of their argument, insisting that the amendment of section 215, supra, had the effect of repealing the local act of 1885. We did understand their argument to be as expressed in the opinion.

Counsel say that what they meant by their argument is thus expressed in their application for rehearing:

"The Local Act of 1885 not only compels Jefferson County to include in its general tax levies a special tax of one-tenth of one percent for roads, but it also compels Jefferson County to devote the proceeds of that tax to the maintenance and construction of roads. That is, to pay debts and liabilities the county incurs for road construction and maintenance insofar as the funds derived from that tax are sufficient for that purpose. The unquestionable consequence is that Jefferson County is, because of the local act, precluded from discharging its debts and liabilities for road purposes out of funds derived from the taxes it levies pursuant to the proviso, to the extent that it is compelled to discharge such debts and liabilities out of funds derived under its general powers of taxation."

But if it be conceded that the funds derived from the second proviso of section 215, supra, can only be used for a purpose for which those raised under the Act of 1885 must at the time of the adoption of the Constitution also have been applied, that does not serve to cause the Act of 1885 to be repealed by said proviso. For it must be remembered that it is not obligatory to raise any funds under section 215, and it is not contemplated that it be done except to supply a need not otherwise provided for. To the extent that the legislature has so provided, it would be a perversion of section 215 to raise funds under it. For the proviso by no means sets up the only method which may be adopted to pay debts and liabilities for building and maintaining roads, as we stated in the instant opinion. If this may be done by the use of funds derived from the five mill tax provided for general purposes, or from any other source, it would not be a proper interpretation of section 215 to hold that it

could not be done in that way, and that the special tax under the said proviso must be the only source from which funds to do so may be obtained. This carries us back to our discussion in the opinion in this case, and makes it appropriate to appellant's version of his argument.

The other question dealt with in the opinion depends upon the application of section 216, Constitution. It is our feeling that we have fully expressed our views, and no new argument has been presented in that connection.

With this discussion, we think the application for rehearing should be, and it is, overruled.

Application for rehearing overruled.

BROWN, LAWSON, SIMPSON, and STAKELY, JJ., concur.