50 So.2d 275

### GARRETT v. COLBERT COUNTY BOARD OF EDUCATION et al.

8 Div. 587.

Supreme Court of Alabama.

Dec. 14, 1950.

Rehearing Denied Jan. 25, 1951.

Arthur L. Shaw, of Tuscumbia, for appellant.

88

Douglas Arant and A. S. Lacy, of Birmingham, W. H. Shaw, of Tuscumbia, and W. A. Rose, Ellene Winn and White, Bradley, Arant & All, all of Birmingham, for appellees.

Lawrence K. Andrews, of Union Springs, Gen. Counsel for Ala. League of Municipalities filed brief amicus curiae in support of appellees.

FOSTER, Justice.

The question involved on this appeal has relation to a special tax levied by a local law No. 485, approved August 30, 1949, Acts 1949, page 704, and also Act No. 601, approved September 19, 1949, Acts 1949, page 935, which has a bearing upon the former act.

Act No. 485, supra, levies a sales and use tax for the county of Colbert equal to one-half of the State sales and use tax and on terms parallel with the State tax law. Sections 8 and 9 of said Act are as follows:

"Seventy-five per cent of the revenue arising from said taxes under this act shall be allocated and paid over to the County Board of Education of Colbert County.

"The remaining twenty-five per cent of said revenue shall be divided between the Board of Education of the City of Tuscumbia and the Board of Education of the City of Sheffield as follows:

"The Board of Education of the City of Tuscumbia shall receive such portion and percentage thereof as the population of the City of Tuscumbia bears to the combined population of the said cities computed according to the last or any subsequent Federal census.

"The Board of Education of the City of Sheffield shall receive such portion and percentage thereof as the population of the City of Sheffield bears to the combined population of the said cities computed according to the last or any subsequent Federal census."

(Section ·9.) "All such revenue arising from the levy herein made and distributed to the Board of Education of the City of Tuscumbia shall be used exclusively for public school purposes in said City and solely for the maintenance and operation of public schools and the construction and improvement of public school buildings in said City.

"All such revenue arising from the levy herein made and distributed to the Board of Education of the City of Sheffield shall be used exclusively for public school purposes in said City and solely for the maintenance and operation of public schools and the construction and improvement of public school buildings in said City of Sheffield.

"All such revenue arising from the levy herein made and distributed to the County Board of Education of Colbert County shall be used exclusively for public school purposes in the County outside of the Cities of Tuscumbia and Sheffield and solely for the maintenance and operation of public schools and the construction and improvement of public school buildings in the County outside of the Cities of Tuscumbia and Sheffield."

Act No. 601, supra, is a general act and has application to any county in which a special sales tax is levied by a local act of the legislature for public school purposes, and authorizes the county board of education of the county or city board of education of a city in any county in which such local tax is levied by a local law to "issue and sell interest bearing warrants with principal and interest to be paid from the revenue arising from said special tax levy and allocated to the Board of Education issuing and selling the warrants and securing a loan, and such board shall have the full authority and power to pledge all or any part of the revenue allocated to such Board of Education under and by virtue of the local act of the Legislature levying the tax. * * * The proceeds of said loan and of said warrants shall be expended by the issuing board for the purposes for which said special taxes are levied and allocated by said local act of the Legislature."

The bill sought an injunction against the custodian of public school funds of Colbert County from collecting the taxes levied by said Act No. 485 and, in the alternative, in the event the court should find that the tax is authorized by law, an injunction against the Board of Education of Colbert County from receiving seventy-five per cent of the revenue derived from said taxes or any other portion thereof and from issuing and selling the warrants authorized by Act No. 601, and from pledging any portion of the revenue derived from said taxes for the payment of said warrants.

There was no issue of fact made by the answer. But there was a cross bill seeking a declaratory judgment as to the right of the board of education under those acts. The court entered a decree denying relief prayed for in the bill; but upon the cross bill decreed that the Board of Education of Colbert County is authorized by Act 601 to sell and issue such warrants as are described in the bill, and that Act No. 485 is not invalid for any reason set forth in the bill, and that the apportionment of the revenue to be derived from the taxes authorized by said Act is valid, legal and proper, and that the county board of education is authorized to pledge so much of said revenues received or to be received by it from said taxes as may be necessary to pay said warrants and make it a primary charge on said tax fund.

It is proposed to borrow $800,000 to be presently used in the construction and improvement of public school buildings in Colbert County outside the cities of Tuscumbia and Sheffield, and to pledge so much of the revenue to be derived under Act No. 485 and allocated by section 8 to the county board of education as may be necessary for that purpose. It does not appear how long the pledge is to continue. It is to be a first charge on said fund and all of it may be used in paying the warrants until all the warrants are paid.

The question is whether Act No. 601 serves to authorize the Board of Education of Colbert County to borrow money and issue warrants to raise funds to be used as directed by section 9 of the Act No. 485. We have shown what proportion-

ate amounts of such fund are allocated to the board of education by section 8 and what use must be made of such fund by it, and again we observe this is to be "solely for the maintenance and operation of public schools and the construction and improvement of public school buildings in the County outside of the Cities of Tuscumbia and Sheffield." We note particularly that the board of education has the right under those acts, in its discretion, to use the proceeds of said tax allocated to it and also the amounts of the proceeds of the loans or warrants sold under Act No. 601, either for the *maintenance and operation* of public schools or for the construction and improvement of public school buildings in the county, so that it is available to the board of education to exercise its discretion within those limits as to the use of said fund, and all of it, for either or both purposes.

The situation divides itself into two legal aspects, one resulting from the right to use the fund in the present maintenance and operation of public schools, in which the taxpayers in future years would not be benefited, and the other in the right to the present construction of permanent school buildings, whose life and usefulness may extend throughout the period covered by a pledge of the taxes involved. Those two legal aspects have a very different constitutional standing as applied to the present situation. Our cases have been careful to make that distinction.

In the case of Farned v. Bolding, 221 Ala. 217, 128 So. 435, 436, this Court dealt with that subject and was considering the right of the Board of Education of Franklin County to borrow money to pay current operating expenses by the issuance of warrants to run seven years and pledging the proceeds of the county's three mill tax. This Court observed:

"Still, a stronger and more imperative policy of justice demands that he who pays the tax shall have the benefit of same.

"To pay a tax which has been anticipated and used in the education of children seven years in the past and increased by a carrying charge by way of interest is not in keeping with such policy.

"The law contemplates a budget confining expenditures to the funds reasonably in prospect."

The Farned case, supra, has been referred to in later opinions of ours for the purpose of distinguishing that situation from one where the funds presently received from the sale of such warrants so pledged were used in some permanent structure whose useful life would likely extend throughout the period covered by the pledged taxes. On that subject we cite the following cases: Harris v. Cope, 236 Ala. 415, 183 So. 407; Harman v. Alabama College, 235 Ala. 148, 177 So. 747.

We have other cases which uphold the transaction where the funds were used in permanent structures, but without particularly referring to the difference between that situation and the one which was applied in Farned v. Bolding, supra. Some of those cases may be cited as follows: Kimmons v. Jefferson County Board of Education, 204 Ala. 384, 85 So. 774; In re. Opinion of the Justices, 231 Ala. 152 (6), 164 So. 572; Johnson v. City of Sheffield, 236 Ala. 411, 183 So. 265; White v. Mayor & Council Decatur, 119 Ala. 476, 23 So. 999; City of Anniston v. Hurt, 140 Ala. 394, 37 So. 220; Isbell v. Shelby County, 235 Ala. 571, 180 So. 567; Davis v. City of Tuscumbia, 236 Ala. 552, 554, 183 So. 657; Cochran v. Marshall County, 242 Ala. 314, 6 So.2d 489; Smith v. Cullman County Board of Education, 236 Ala. 649, 184 So. 475; Shelby County Board of Revenue v. Farson, 197 Ala. 375, 72 So. 613; Opinion of the Justices, 220 Ala. 539, 126 So. 161; Herbert v. Perry, 235 Ala. 71, 177 So. 561; Opinion of the Justices, 230 Ala. 673, 163 So. 105.

We have extended the principle of the case of Farned v. Bolding, supra, to other situations, although not here directly in point. The principle of them being that the law does not contemplate that a county or city, to meet current expenses, shall draw upon revenues to be derived in the future from taxes to be paid in the future for operations then necessary to be conducted. Brown v. Gay-Padgett, 188 Ala. 423, 66 So. 161; Hagan v. Commissioner's

Court of Limestone County, 160 Ala. 544, 49 So. 417, 37 L.R.A.,N.S., 1027; In re Opinion of the Justices, 252 Ala. 194, 41 So.2d 559; Lawrence County v. Ayers, 229 Ala. 541, 158 So. 740; Wharton v. Knight, 241 Ala. 218 (10), 2 So.2d 310.

We have cited above a number of cases which approve the principle that a state agency when legally authorized may anticipate a special provision for it by pledging that which will accrue in future years to secure and pay warrants on which an amount is presently obtained to be used in making permanent and useful structures. Those cases are of three classes: one relates to the three mill special school tax authorized by amendment No. 3 to the Constitution, given effect by section 254 et seq., Title 52, Code; another relates to the gasoline tax allocated to the counties; and another relates to an appropriation to certain colleges payable in annual amounts for the construction of permanent buildings.

The three mill tax is by constitutional authority and when a taxing district votes for it, it fixes a definite limit both as to time and rate, and it is not subject to legislative control during such period. It becomes a definite and fixed asset for that district, which loses none of its sovereignty by thus anticipating the collection of the tax, not to pay current operating expenses, but to invest in permanent structures whose useful life is due to extend throughout the taxing period.

The gasoline tax is divided with all the counties, so that each county is to receive the same amount from that source each year. Sections 656 and 657, Title 51, as amended by the Act of May 18, 1943, General Acts 1943, page 21, Code, Pocket Part. The proceeds are to be used exclusively for the definite purpose of road building and to pay warrants due in future years for funds for that purpose within the limits fixed by law. Herbert v. Perry, supra; Cochran v. Marshall County, supra, and other cases.

In the cases cited above we were not called upon to declare what legislative power exists after warrants have been issued secured by a pledge of the proceeds of such tax pursuant to law. And in respect to the effect of a pledge by legislative authority of an appropriation payable annually, the power of the State has not been determined. In those cases the question related to the authority and right to pledge in respect to its effect on the debt limit in the Constitution.

The argument is made that to pledge the revenue to be derived from the tax levied by the Act No. 485 would freeze the apportioning formula in that Act and the use to be made of the revenue, so that the legislature could not change it to meet changes in the respective needs of the beneficiaries. The theory insisted on is that when such pledge is made by authority of law the taxing statute becomes in effect a part of the contract with security holders and that any change would violate or impair contract rights.

■ While the law as it now stands would enter into the contract, Edwards v. Williamson, 70 Ala. 145, it would do so subject to the reserved power of the State to legislate, which would be a part of it as well as its terms. State of Indiana v. Brand, 303 U.S. 95, 58 S.Ct. 443, 82 L.Ed. 685; Johnson v. City of Sheffield, 236 Ala. 411, 183 So. 265.

■ The principle is well established that neither the State or any inferior legislative body can alienate, surrender or abridge its right or ability to function in the future. Harris v. Cope, 236 Ala. 415 (7), 183 So. 407; 12 C.J. 912, section 423, 16 C.J.S., Constitutional Law, § 179; 43 C.J. 211, 62 C.J.S., Municipal Corporations, § 139; Alabama Water Co. v. City of Attalla, 211 Ala. 301 (7), 100 So. 490; Board of Education of Jefferson County v. State ex rel., 237 Ala. 434 (4), 187 So. 414; Johnson v. City of Sheffield, supra.

■■ If a city or county is permitted to abridge by contract its power to raise revenue under legislative authority by a sales tax it could thus be deprived of the power to raise sufficient funds for its current operating expenses in future years. The legislature cannot authorize a county or city by contract to abridge the power

of the legislature to raise money for the governmental functions of such county or city. The legislature cannot authorize a city or county to pledge funds to be derived in the future from taxes so as to put a limitation upon the power of the legislature to provide for the future operating expenses of such city or county. Johnson v. City of Sheffield, supra; White v. Mayor & Council of Decatur, 119 Ala. 476, 23 So. 999; Hagan v. Commissioner's Court of Limestone County, 160 Ala. 544, 49 So. 417, 37 L.R.A.,N.S., 1027.

■ We observed in Newton v. City of Tuscaloosa, 251 Ala. 209, 216 (5 and 6), 36 So.2d 487, 492, that "the authority of the county to tax is one derived from the legislature, and may be withheld, withdrawn, or modified (no contractual rights of third persons intervening to compel action)", referring especially to our case of Edwards v. Williamson, supra.

■ The case of Edwards v. Williamson involved a change in the law in respect to the collector's bond after contract rights had accrued. That change was detrimental to the value of the bond involved. The Court held that the law in effect when the contract rights accrued, applied notwithstanding the change. It did not involve the right to contract in a manner to abridge legislative power to provide for its functions. That right has often been considered by the United States Supreme Court and this Court since the case of Edwards v. Williamson, supra. We refer to our cases of Mutual Building and Loan Ass'n v. Moore, 232 Ala. 488, 169 So. 1, and First Nat. Bank v. Jaffe, 239 Ala. 567, 196 So. 103. We there cited Edwards v. Williamson, supra. Those cases upheld the State's so-called moratorium law. It was observed that the police power of the State enters into every *personal contract*. But that under that power the State cannot materially and permanently impair the value of rights created by personal contracts, nor take property without just compensation, nor materially affect the financial status of the parties fixed by contract, nor prohibit a prompt and convenient remedy for its enforcement. As to the last above clause, we cited Edwards v. Williamson, supra. We referred to the same principle in the Jaffe case, supra. In the case of Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 239, 78 L.Ed. 413, 88 A.L.R. 1481, it is said: "Not only are existing laws read into contracts in order to fix obligations as *between the parties*, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order." This was repeated in Gelfert v. National City Bank, 313 U.S. 221, 61 S.Ct. 898, 85 L.Ed. 1299. Those cases hold that the police power of the state is such an attribute and that contracts between individuals are subject to an exercise of such power by the state as will not destroy the essential value of the contract, though it may change important features of it.

■ In the case of State of Indiana v. Brand, 303 U.S. 95, 58 S.Ct. 443, 450, 82 L.Ed. 685, the court was dealing with a contract between the state and individuals. It was sought to apply the principle that every contract is subject to the state's police power. The court observed: "Our decisions recognize that every contract is made subject to the implied condition that its fulfillment may be frustrated by a proper exercise of the police power but we have repeatedly said that, in order to have this effect, the exercise of the power must be for an end which is in fact public and the means adopted must be reasonably adapted to that end." The court then proceeded to show that the repeal of the act creating the contract was not a proper exercise of the police power under that principle.

But when the repealing or amendatory act of the legislature is for an end which is public and it is reasonably adapted to that end, the police power is well applied and effective. The effect is that a contract by the State or an instrumentality of the State, by legislative authority, is subject to such reserved limitation to the extent that it purports to bind funds to be derived from the power of taxation in future years.

■ The police power is not the only power so reserved. But it includes also

the legislative power to make necessary provision for the county or city to perform all of its governmental functions. Johnson v. City of Sheffield, supra. The legislative power which may be given to a city to contract in respect to the fixation of certain license fees, City of Birmingham v. Birmingham Water Works Co., 139 Ala. 531, 36 So.2d 614; City of Montgomery v. Montgomery City Lines, 254 Ala. 652, 49 So.2d 199, is, we think, subject to the reserved legislative power which is here referred to.

Under Acts 485 and 601, the pledge would be good and effective, as there authorized, not subject to change by the county for other uses, except by legislative authority for the purpose of performing its governmental functions when necessary to that end. The authority to use it for other purposes must be by virtue of legislation. The county could not do so otherwise.

It is also earnestly insisted by complainant, appellant here, that the apportioning formula of section 8, which we have here quoted, is unreasonable, arbitrary and unfair, in that, seventy-five per cent of the funds to be derived from the tax is allocated to the county board of education to be used elsewhere in the county than in Tuscumbia and Sheffield, and that the allocation of twenty-five per cent for Tuscumbia and Sheffield is unfair to them. In support of that contention, appellant has set out in brief figures which show that in the 1940 census the population of the county outside of Tuscumbia and Sheffield was sixty per cent. Sheffield had twenty-three per cent plus and Tuscumbia sixteen per cent plus. The census of 1950 makes some changes in that respect to the advantage of Tuscumbia and Sheffield.

Such allocation is purely legislative and is not subject to review by the court if it is based upon any sort of reasonable foundation. 61 Corpus Juris 1525, section 2244. This question is also referred to in the case of Newton v. City of Tuscaloosa, 251 Ala. 209 (29), 36 So.2d 487. Compare, Board of Revenue of Jefferson County v. City of Birmingham, 172 Ala. 138, 54 So.

757, Id., 248 Ala. 319, 27 So.2d 584, Id., 251 Ala. 634, 38 So.2d 844; section 130, Title 12, Code. Compare also the distribution, here mentioned, of the gasoline tax in equal amounts to each county, regardless of their standing to each other in that respect.

In passing upon the validity of such an apportionment made by legislative authority, whose province it is to make such allocation, the Court will not examine it with a critical eye or weigh too closely one claim against the other in order to fix a true balance. The rule is stated as follows in Frazier v. State Tax Commission, 234 Ala. 353, 175 So. 402, 405, 110 A.L.R. 1479: "The limitation on the discretion of the Legislature and on municipal authorities, in making of classification in statutes or municipal ordinances, is that the same be (1) not arbitrary, (2) not a subterfuge to shield one class and unduly burden another, or (3) to unlawfully oppress in its administration. Such is the rule that obtains in state and federal courts."

We find no such situation with respect to the apportionment made effected by Act No. 485.

In this connection, it is also insisted that the apportionment violates the principle which prevents the levy of special taxes from the citizens of a definite locality to be expended in some other locality. That principle was very carefully considered by the Supreme Court of Florida in the case of Amos v. Mathews, 99 Fla. 1, 23, 24, 26, 126 So. 308. It is of universal application so far as we have been able to find. In 1 Cooley on Taxation (4th Ed.) section 314, with reference to a district tax it is said: "The purpose to be accomplished thereby (the tax) shall be one which in a special and peculiar manner pertains to the district within which it is proposed that the contribution called for shall be collected."

We do not think that principle here serves to strike down Act No. 485 on account of the apportionment feature of it. The tax is a county wide one, having the county as the unit. It is not a tax on one district to be applied to another. It is paid by persons in the two cities and outside the two cities, all alike and for one fund. The

question is one of apportionment rather than as above insisted on, although by exact measurement more of the tax may be paid in the cities than is apportioned to them. If the apportionment is not invalid, the other principle has no application here.

 We agree with the declaration made by the trial court, as follows:

"1. The Board of Education of Colbert County is authorized by law to sell and issue the warrants referred to in paragraph 5(a) of the bill of complaint.

"2. Act No. 485 of the Legislature of Alabama of 1949, is not invalid for any of the reasons set forth in paragraph 6 of the bill of complaint filed herein, or for any other reason.

"3. The apportionment of the revenues derived or to be derived from the taxes authorized to be levied by Act No. 485 of the Legislature of Alabama in the manner provided by section 8 of said Act is valid, legal and proper and the receipt by the Board of Education of Colbert County of seventy-five per centum (75%) of said revenues is authorized, legal and proper.

"4. The said County Board of Education is authorized by law to pledge so much of said revenues received or to be received by it from said taxes as may be necessary to pay the principal of and interest on said warrants and to make said pledge a first charge upon said revenues."

However, with the reservation that the legislature may amend the Act No. 485 when necessary to enable the county to raise revenue to perform its governmental functions, and that the rights of the proposed pledgees of the fund under Act No. 601 will be subject to such amendment.

The decree of the trial court is thus modified and, as modified, it is affirmed.

Modified and affirmed.

BROWN, LIVINGSTON, LAWSON, SIMPSON and STAKELY, JJ., concur.

BROWN, Justice (specially concurring).

My concurrence in the foregoing opinion is subject to the reservation that, while the power to determine the *necessity* for using pledged funds for current maintenance of local government, a question not now presented, is in the first instance legislative, the question of such necessity is ultimately judicial in its essence and must be determined by the courts. Caylor v. State, 219 Ala. 12, 121 So. 12.